B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br><br>Gary Cruickshank, Chapter 7 Trustee | DEFENDANTS<br><br>*See Attached Sheet* |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Ilyas J. Rona, Esq. (BBO# 642964)<br>Milligan Rona Duran & King LLC, 50 Congress St.,<br>Ste. 600, Boston, MA 02109 (617) 395-9570 | ATTORNEYS (If Known) |
|---|---|

| PARTY (Check One Box Only)<br>□ Debtor □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor □ Other<br>☒ Trustee | PARTY (Check One Box Only)<br>□ Debtor □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor ☒ Other<br>□ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Fraudulent Transfer/Avoidance and Recovery/Turnover of Property under 11 USC §§ 542, 544, 550; Malpractice; Breach of Fiduciary Duties; Breach of Contract; Civil Theft;

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☒ 11-Recovery of money/property - §542 turnover of property
☒ 12-Recovery of money/property - §547 preference
☒ 13-Recovery of money/property - §548 fraudulent transfer
☒ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
□ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
□ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
□ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
□ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
□ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
□ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
□ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
□ 61-Dischargeability - §523(a)(5), domestic support
□ 68-Dischargeability - §523(a)(6), willful and malicious injury
□ 63-Dischargeability - §523(a)(8), student loan
□ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
□ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
□ 71-Injunctive relief – imposition of stay
□ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
□ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
□ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
□ 01-Determination of removed claim or cause

**Other**
□ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
□ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $ Unknown |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Blast Fitness Group, LLC | BANKRUPTCY CASE NO.<br>16-10236-MSH | |
| DISTRICT IN WHICH CASE IS PENDING<br>Bankr. D. Mass. | DIVISION OFFICE<br>East | NAME OF JUDGE<br>Hon. Melvin Hoffman |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>January 26, 2018 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Ilyas J. Rona | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

## Addendum to the Adversary Proceeding Cover Sheet: Defendants

HAROLD R. DIXON, JULIET J. DIXON, THOMAS MORAN, FRANK HENNESSEY, CAPE CAPITAL, LLC, DIXON FAMILY LIMITED PARTNERSHIP, MICHAEL J. CRAFFEY, INDIVIDUALLY AND AS TRUSTEE OF THE HAROLD R. DIXON IV GST TRUST, AS TRUSTEE OF GEORGE L. DIXON GST TRUST, AS TRUSTEE OF WILLIAM A. DIXON GST TRUST, AND AS TRUSTEE OF JOHN E. DIXON GST TRUST, PETER FENN, THOMAS F. WALSH, INDIVIDUALLY AND AS TRUSTEE OF THE HAROLD R. DIXON IV GST TRUST, AS TRUSTEE OF GEORGE L. DIXON GST TRUST, AS TRUSTEE OF WILLIAM A. DIXON GST TRUST, AS TRUSTEE OF JOHN E. DIXON GST TRUST, AS TRUSTEE OF 63 CART PATH ROAD NOMINEE TRUST, AS TRUSTEE OF 31 GREEN LANE NOMINEE TRUST, HAROLD R. DIXON IV GST TRUST, GEORGE L. DIXON GST TRUST, WILLIAM A. DIXON GST TRUST, JOHN E. DIXON GST TRUST, 63 CART PATH ROAD NOMINEE TRUST, 31 GREEN LANE NOMINEE TRUST, JAMES MOSES, LEXFIT, LLC, NEWFIT, LLC, YOU FIT, LLC, BLAST FITNESS GROUP PERSONAL TRAINING, LLC, BLAST FITNESS SCHAUMBURG, LLC, BLAST FITNESS LAWRENCE, LLC, BLAST FITNESS MASHPEE, LLC, BLAST FITNESS PLYMOUTH, LLC, BLAST FITNESS SAUGUS, LLC, BLAST FITNESS ACQUISITION, LLC, BLAST FITNESS WORCESTER, LLC, BLAST FITNESS TEWKSBURY, LLC, BLAST FITNESS GROUP NILES LLC, BLAST FITNESS CAMBRIDGE LLC, BLAST FITNESS JEFFERSON LLC, BLAST FITNESS GLENDALE HEIGHTS, LLC, BLAST FITNESS HUMBLE, LLC, BLAST FITNESS PARLIAMENT, LLC, BLAST FITNESS NAPERVILLE, LLC, TOWNLINE PLAZA MEDFORD, BLAST FITNESS WR, LLC, NEWFIT MGMT, LLC, AUBURNDALE FITNESS GROUP INVESTMENTS, LLC, CAPECAPITAL MARYLAND HEIGHTS, LLC, NO. 10, LLC, CAPECAPITAL WEST HARTFORD, LLC, WH-ELM, LLC, CAPECAPITAL IRVING, LLC, KLOPRO-BELT, LLC, CAPECAPITAL JEWEL, LLC, STONEGATE GROUP, LLC, GOODWIN PROCTER, LLP, JOHN LECLAIR, and JOHN DOES 1-62,

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

In re:

BLAST FITNESS GROUP, LLC,

      Debtor.

Chapter 7
Case No. 16-10236-MSH

GARY W. CRUICKSHANK, CHAPTER 7
TRUSTEE OF THE ESTATE OF BLAST FITNESS
GROUP, LLC,

      Plaintiff,

   v.

HAROLD R. DIXON, JULIET J. DIXON,
THOMAS MORAN, FRANK HENNESSEY,
CAPE CAPITAL, LLC, DIXON FAMILY
LIMITED PARTNERSHIP, MICHAEL J.
CRAFFEY, INDIVIDUALLY AND AS TRUSTEE
OF THE HAROLD R. DIXON IV GST TRUST, AS
TRUSTEE OF GEORGE L. DIXON GST TRUST,
AS TRUSTEE OF WILLIAM A. DIXON GST
TRUST, AND AS TRUSTEE OF JOHN E. DIXON
GST TRUST, PETER FENN, THOMAS F.
WALSH, INDIVIDUALLY AND AS TRUSTEE
OF THE HAROLD R. DIXON IV GST TRUST, AS
TRUSTEE OF GEORGE L. DIXON GST TRUST,
AS TRUSTEE OF WILLIAM A. DIXON GST
TRUST, AS TRUSTEE OF JOHN E. DIXON GST
TRUST, AS TRUSTEE OF 63 CART PATH ROAD
NOMINEE TRUST, AS TRUSTEE OF 31 GREEN
LANE NOMINEE TRUST, HAROLD R. DIXON
IV GST TRUST, GEORGE L. DIXON GST TRUST,
WILLIAM A. DIXON GST TRUST, JOHN E.
DIXON GST TRUST, 63 CART PATH ROAD
NOMINEE TRUST, 31 GREEN LANE NOMINEE
TRUST, JAMES MOSES, LEXFIT, LLC, NEWFIT,
LLC, YOU FIT, LLC, BLAST FITNESS GROUP

Adv. Proceeding No.:

PERSONAL TRAINING, LLC, BLAST FITNESS
SCHAUMBURG, LLC, BLAST FITNESS
LAWRENCE, LLC, BLAST FITNESS MASHPEE,
LLC, BLAST FITNESS PLYMOUTH, LLC, BLAST
FITNESS SAUGUS, LLC, BLAST FITNESS
ACQUISITION, LLC, BLAST FITNESS
WORCESTER, LLC, BLAST FITNESS
TEWKSBURY, LLC, BLAST FITNESS GROUP
NILES LLC, BLAST FITNESS CAMBRIDGE LLC,
BLAST FITNESS JEFFERSON LLC, BLAST
FITNESS GLENDALE HEIGHTS, LLC, BLAST
FITNESS HUMBLE, LLC, BLAST FITNESS
PARLIAMENT, LLC, BLAST FITNESS
NAPERVILLE, LLC, TOWNLINE PLAZA
MEDFORD, BLAST FITNESS WR, LLC, NEWFIT
MGMT, LLC, AUBURNDALE FITNESS GROUP
INVESTMENTS, LLC, CAPECAPITAL
MARYLAND HEIGHTS, LLC, NO. 10, LLC,
CAPECAPITAL WEST HARTFORD, LLC, WH-
ELM, LLC, CAPECAPITAL IRVING, LLC,
KLOPRO-BELT, LLC, CAPECAPITAL JEWEL,
LLC, STONEGATE GROUP, LLC, GOODWIN
PROCTER, LLP, JOHN LECLAIR, and JOHN
DOES 1-62,

      Defendants.

## COMPLAINT

Blast Fitness Group, LLC, owned, operated, and managed $10-a-month fitness

clubs throughout the United States. During its peak, over 60 clubs bore the Blast Fitness

name. This case generally arises from Harold Dixon's hard-nosed effort to turn these

clubs and their assets into a profitable business for himself at the expense of the club

owners, his business partners, investors, landlords, employees, and general creditors.

Aided by attorneys willing to represent adverse parties in transactions, Harold Dixon

and his cohorts shielded themselves from Blast Fitness Group LLC's creditors and siphoned off the valuable real estate and other assets that would have been otherwise available to support the Blast Fitness organization and repay the debts owed to its creditors.

## PARTIES

1.      The Plaintiff, Gary W. Cruickshank (the "Trustee"), is the Chapter 7 Trustee in Bankruptcy for the Debtor, Blast Fitness Group, LLC (the "Debtor"), with a place of business at Twenty-One Custom House Street, Suite 920, Boston, Massachusetts 02110 (Suffolk County). The Plaintiff brings this action solely in his capacity as Trustee.

2.      Defendant Harold R. Dixon ("Dixon") is an individual with a business address of 287 Auburn Street, Newton, MA. At all times relevant hereto, Dixon held himself out as the CEO of Debtor.

3.      Defendant Cape Capital, LLC ("Cape Capital") is a Massachusetts limited liability company with a principal office at 287 Auburn Street, Newton, MA. Cape Capital is the sole manager of the Debtor. Dixon is the sole manager of Cape Capital. Upon information and belief, Dixon is also a member of Cape Capital.

4.      Defendant Juliet J. Dixon is an individual with a residential address of 63 Cart Path Road, Weston MA.

5.      Defendant Dixon Family Limited Partnership is a limited partnership in which, upon information and belief, Dixon is a general partner.

6.      Defendant Thomas Moran ("Moran") is an individual with a business address of 452 Lexington Street, Newton, MA.

3

7.      Defendant Frank Hennessey ("Hennessey") is an individual with a business address at 287 Auburn Street, Newton, MA.

8.      Defendant Michael J. Craffey, individually and as a trustee of multiple trusts, is an individual with an address of 11 Magnolia Drive, Lynnfield, MA.

9.      Defendant Lexfit, LLC ("Lexfit") is a Massachusetts limited liability company with a principal office at 452 Lexington Street, Newton, MA. Cape Capital is the sole manager of Lexfit.

10.     Defendant Newfit, LLC ("Newfit") is a Massachusetts limited liability company with a principal office at 287 Auburn Street, Newton, MA. Cape Capital and Dixon are the managers of Newfit.

11.     Defendant You Fit, LLC ("You Fit") is a limited liability company with an unknown state of incorporation and having an unknown principal office location.

12.     Defendant Peter Fenn is an attorney who has represented Debtor and has held himself out as General Counsel of Debtor. He has also represented Newfit.

13.     Defendant Thomas F. Walsh, individually and as a trustee of multiple trusts, is an individual with an address of 345 Upham Street, Melrose, MA and 155 Seaport Boulevard, Boston, MA. Upon information and belief, Defendant Walsh used to share the same business address as Currier Law Office LLC, a boutique law firm specializing in "estate planning" for high net worth individuals and families.

14.     Defendant Newfit MGMT, LLC ("Newfit MGMT") is a Massachusetts limited liability company with a principal office at 2000 Commonwealth Ave., Newton, MA. Newfit is the sole manager of Newfit MGMT.

4

15.     Defendant Auburndale Fitness Group Investments, LLC ("Auburndale Fitness Group") is a Massachusetts limited liability company with a principal office at 287 Auburn Street, Newton, MA. Dixon is the sole manager of Auburndale Fitness Group.

16.     Defendant Auburndale Fitness Group Investments, LLC ("Auburndale Fitness Group") is a Massachusetts limited liability company with a principal office at 287 Auburn Street, Newton, MA. Dixon is the sole manager of Auburndale Fitness Group.

17.     Defendant Goodwin Procter LLP ("Goodwin") is a limited liability partnership with a principal office at 100 Northern Avenue, Boston, MA 02210.

18.     Defendant John LeClair ("LeClair") is an attorney who is licensed in Massachusetts. LeClair is a partner at Goodwin.

19.     Defendant Capecapital Maryland Heights, LLC, is a Missouri limited liability company with a principal office at 287 Auburn Street, Newton, MA. Dixon is the manager of Capecapital Maryland Heights, LLC.

20.     Defendant No. 10, LLC, is a Missouri limited liability company with a principal office at 11555 Concord Village Avenue, Saint Louis, MO, 63128.

21.     Defendant Capecapital West Hartford LLC is a Connecticut limited liability company with a principal office at 287 Auburn Street, Newton, MA. Dixon is the manager of Capecapital West Hartford LLC.

22.     Defendant WH-ELM LLC is a Connecticut limited liability company with a principal office at 244 Middletown Avenue, East Hampton, CT.

23.     Defendant Capecapital Irving, LLC, is a Texas limited liability company with a principal office at 287 Auburn Street, Newton, MA. Dixon is the sole member and sole manager of Capecapital Irving, LLC.

24.     Defendant Klopro-belt, LLC, is a Texas limited liability company, having a business address of 5131 Mercantile Row, Dallas, TX 75247.

25.     Defendant Stonegate Group LLC is a Massachusetts limited liability company with a principal office at 83 Speen Street, Natick, MA 01760.

26.     Defendant Capecapital Jewel LLC is a Illinois limited liability Company, now administratively dissolved by the Illinois Secretary of State, with a principal office at 6057 S. Western Avenue, Chicago, IL 60636. Dixon and Stonegate Group LLC are managers of Capecapital Jewel LLC.

27.     Defendant The Harold R. Dixon, IV GST Trust is a Trust with both Michael J. Caffey and Thomas F. Walsh as trustees. On information and belief, Defendant The Harold R. Dixon, IV GST Trust has a business address of both 11 Magnolia Drive, Lynnfield, MA and/or 345 Upham Street, Melrose, MA.

28.     Defendant The George L. Dixon GST Trust is a Trust with both Michael J. Caffey and Thomas F. Walsh as trustees. On information and belief, Defendant The George L. Dixon GST Trust has a business address of both 11 Magnolia Drive, Lynnfield, MA and/or 345 Upham Street, Melrose, MA.

29.     Defendant The William A. Dixon GST Trust is a Trust with both Michael J. Caffey and Thomas F. Walsh as trustees. On information and belief, Defendant The

William A. Dixon GST Trust has a business address of both 11 Magnolia Drive, Lynnfield, MA and/or 345 Upham Street, Melrose, MA.

30.     Defendant The John E. Dixon GST Trust is a Trust with both Michael J. Caffey and Thomas F. Walsh as trustees. On information and belief, Defendant The John E. Dixon GST Trust has a business address of both 11 Magnolia Drive, Lynnfield, MA and/or 345 Upham Street, Melrose, MA.

31.     Defendant 63 Cart Path Road Nominee Trust is a trust with Thomas F. Walsh as trustee. On information and belief, Defendant 63 Cart Path Road Nominee Trust has a business address of 345 Upham Street, Melrose, MA.

32.     Defendant The 31 Green Lane Nominee Trust is a trust, having Thomas F. Walsh as trustee, having an address at 345 Upham Street, Melrose, MA and/or 155 Seaport Boulevard, Boston, MA.

33.     Defendant James "Jimmy" Moses is an individual with a business address at 287 Auburn Street, Newton, MA.

34.     Defendant Blast Fitness Schaumburg, LLC ("Blast Schaumburg") was an Illinois limited liability company that has ceased operations. Blast Schaumburg had a principal office at 560 S. Roselle Rd., Schaumburg, IL 60193

35.     Defendant Blast Fitness Lawrence, LLC ("Blast Lawrence") is a Massachusetts limited liability company with a principal office at 452 Lexington Street, Newton, MA. The Debtor is the sole manager of Blast Lawrence.

36.     Defendant Blast Fitness Mashpee, LLC ("Blast Mashpee") is a

Massachusetts limited liability company with a principal office at 106 Falmouth Rd.,

Route 28, Mashpee, MA. Newfit is the sole manager of Blast Mashpee.

37.     Defendant Blast Fitness Plymouth, LLC ("Blast Plymouth") is a

Massachusetts limited liability company with a principal office at 30 Commercial Street,

Foxboro, MA. Steven Borghi ("Borghi") is the sole manager of Blast Plymouth.

38.     Defendant Blast Fitness Saugus, LLC ("Blast Saugus") is a Massachusetts

limited liability company with a principal office at 287 Auburn Street, Newton, MA.

Newfit is the sole manager of Blast Saugus.

39.     Defendant Blast Fitness Acquisition, LLC ("Blast Acquisition") is a

Massachusetts limited liability company with a principal office at 452 Lexington Street,

Newton, MA. Dixon is the sole manager of Blast Acquisition. Harold Dixon is the

manager of Blast Acquisition.

40.     Defendant Blast Fitness Worcester, LLC ("Blast Worcester") is a

Massachusetts limited liability company with a principal office at 525 Lincoln Street,

Worcester, MA. Borghi is the sole manager of Blast Worcester.

41.     Defendant Blast Fitness Tewksbury, LLC ("Blast Tewksbury") is a

Massachusetts limited liability company with a principal office at 452 Lexington Street,

Newton, MA. Auburndale Fitness Group Investment, LLC is the sole manager of Blast

Tewksbury.

42.     Defendant Blast Fitness Group Niles LLC, is an Illinois limited liability

corporation with a principal office at 8526-T Golf Road, Niles, Illinois.

43.     Defendant Blast Fitness Cambridge LLC is a Massachusetts limited liability company with a principal office at 1815 Massachusetts Avenue, Cambridge, MA.

44.     Defendant Blast Fitness Jefferson LLC is a Missouri limited liability company with a principal office at 1601 S Jefferson Avenue, St. Louis, MO.

45.     Defendant Blast Fitness Glendale Heights, LLC, is an Illinois limited liability company with a principal office at 127 East North Ave., Glendale Heights, IL 60139.

46.     Defendant Blast Fitness Humble, LLC, is a Texas limited liability company with a principal office at 19304 Highway 59, Humble, TX 77338.

47.     Defendant Blast Fitness Parliament, LLC, is a Texas limited liability company with a principal office at 11799 West Ave, San Antonio, TX 78216.

48.     Defendant Blast Fitness Naperville, LLC, is a Florida limited liability company with a principal office at 790 Royal St. George Drive, Naperville, IL 60661.

49.     Defendant Townline Plaza Medford is a Massachusetts limited liability company with a principal office at 285 Middlesex Avenue, Medford, MA 02155.

50.     Defendant Blast Fitness WR, LLC ("Blast WR") is a Massachusetts limited liability company with a principal office at 1600 VTW Parkway, West Roxbury, MA. Newfit is the sole manager of Blast WR.

51.     Defendant Blast Fitness Group Personal Training, LLC ("Blast Group PT") is a Massachusetts limited liability company with a principal office at 287 Auburn Street, Newton, MA. The Debtor is the sole manager of Blast Group PT.

9

52.     Defendant John Does 1 - 20 are unknown wholly-owned entities of the Debtor.

53.     Defendant John Does 21 - 41 are unknown parties who are related by blood or marriage or share some common ownership with the Debtor, Harold Dixon, or Cape Capital.

54.     Defendant John Does 42 to 62 are unknown parties.

55.     Defendants Cape Capital, Lexfit, Newfit, Newfit MGMT, and Auburndale Fitness Group are related entities (hereafter referred to as the "Related Entity Defendants"). Every Related Entity Defendant is managed by another Related Entity Defendant or by either Dixon or Borghi.

56.     Blast Fitness Schaumburg, LLC, Blast Fitness Lawrence, LLC, Blast Fitness Mashpee, LLC, Blast Fitness Plymouth, LLC, Blast Fitness Saugus, LLC, Blast Fitness Acquisition, LLC, Blast Fitness Worcester, LLC, Blast Fitness Tewksbury, LLC, Blast Fitness Group Niles LLC, Blast Fitness Cambridge LLC, Blast Fitness Jefferson LLC, Blast Fitness Glendale Heights, LLC, Blast Fitness Humble, LLC, Blast Fitness Parliament, LLC, Blast Fitness Naperville, LLC, Townline Plaza Medford, and Blast Fitness WR, LLC, were subsidiaries owned entirely by or partially by the Debtor and are hereafter referred to as "Blast-Related Entities."

## JURISDICTION

57.     On January 26, 2016, the Debtor filed a Voluntary Petition for Relief pursuant to Chapter 7 of the United States Bankruptcy Code. Gary W. Cruickshank was duly appointed Chapter 7 Trustee on January 27, 2016.

58.     The Trustee's claims arise under and are related to the above-captioned

Chapter 7 case, currently pending in this district.

59.     This Court has subject matter jurisdiction over the Trustee's claims in

accordance with 28 U.S.C. §§ 1334, 151, and 157, and 11 U.S.C. §§ 105, 502, 541, 544, 547,

548, 549, and 550.

60.     This matter is a core proceeding in accordance with 28 U.S.C. §§ 157(b)(1),

157(b)(2)(E), 157(b)(2)(F), 157(b)(2)(H), and 157(b)(2)(O).

61.     Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1409.

## FACTS COMMON TO ALL COUNTS

### Introduction

62.     This case arises from Harold Dixon's hard-nosed effort to turn no-frills

$10/month gym clubs into a profitable business for himself at the expense of club

owners, fellow business partners, investors, landlords, employees, and general

creditors.

63.     The scheme had various elements ranging in subtlety and demonstrated

an acute understanding of how to use—and misuse—corporate forms and transactions

to transfer assets, conceal the transfers, and, in the end, line Dixon's pockets and those

of his fellow co-conspirators and fellow fiduciaries.

64.     Dixon used Debtor funds to subsidize the acquisition of real estate at a

well-below-market cost, only to turn around and charge the Debtor above-market rent.

Dixon's entities then sold real estate for millions more than they paid, and pocketed this

11

massive gain. This was a theft of corporate opportunity and a breach of the duty of loyalty.

65.     Dixon also cherry-picked the more profitable clubs for his own benefit, leaving Debtor with only insolvent and less profitable clubs. One way Dixon achieved this was to use debt to ease the acquisition of valuable assets from the Debtor. Dixon arranged to have the Debtor's loans to Dixon come due at a point when the revenue for the clubs was approaching break even. Instead of allowing Debtor to reap the rewards of its investment and labor, Dixon un-handed Debtor of those clubs through a series of transactions that fraudulently transferred Debtor's most valuable assets. Dixon was able to siphon off more than a dozen clubs in this fashion, ultimately turning around and selling these clubs, once they had become profitable, for a significant profit, all at the expense of Debtor and creditors.

66.     Dixon used a variety of other techniques to siphon off the profitable clubs. First, he manipulated spreadsheets used for internal valuations to make certain clubs looked less profitable than they really were. This made the taking of certain clubs seem more defensible. Second, he diverted equipment, personnel, and funds from one club to another club to make the clubs he was eyeing for himself thrive, leaving the clubs that remained with the Debtor to languish. In so doing, he disregarded the very maze of corporate entities that he had set up to conceal his actions. These corporations served no purpose but to thwart creditors. Money, assets, and revenue were freely commingled solely to benefit Dixon. Third, even a closed club had revenue in the form of paid memberships that renewed, membership lists, and equipment. These were moved out

12

of failing clubs without any regard for the clubs' creditors. These transfers and shell-games left a twisted trail of litigation that stretches across the country.

67.     In 2012, Dixon and his wife, Defendant Juliet Dixon, began transferring their personal real estate assets out of their personal estate to various trusts.

### *Cape Capital*

68.     On February 14, 2011,  Cape Capital, acting through Harold Dixon, formed the Debtor Blast Fitness Group, LLC, having an initial address of 452 Lexington Street, Auburndale, MA 02466.

69.     At all times relevant to this Complaint, the Debtor acted at the direction of Cape Capital and Dixon.

70.     The Debtor, and all of the Debtor's wholly owned, majority owned, or partially owned entities were undercapitalized.

71.      Cape Capital and Harold Dixon failed to properly and adequately capitalize the Debtor and the Blast Entities.

72.      Cape Capital and Harold Dixon purposefully failed to properly and adequately capitalize the Blast Entities.

73.      Cape Capital and Harold Dixon owed fiduciary duties to the Debtor.

74.      Cape Capital and its agent Harold Dixon failed to follow corporate procedures and failed to respect corporate formalities for the Blast Entities.

75.      Cape Capital and its agent Harold Dixon would often direct: 1) certain Blast Entities to pay liabilities of other Blast Entities and third parties; and 2) certain Blast Entities to transfer assets to other Blast Entities or third parties. All of this was

13

done by Cape Capital and its agent Dixon without ensuring fair consideration between and among the Blast Entities, and without ensuring fair and adequate consideration between the Blast Entities and third parties. This was done to the great detriment of the Debtor's creditors, who loaned funds and provided services to the Blast Entities.

76.     Peter Fenn, Harold Dixon, Cape Capital, Moran, and Frank Hennessey conspired to and intentionally concealed fraudulent transfers, preferences, liabilities, and the existence of additional assets from creditors and the Trustee. To the extent that this concealment prevents the Trustee from recovering funds and assets, Peter Fenn, Harold Dixon, Cape Capital, Moran, and Frank Hennessey are liable, at law and equity, to the Debtor's estate.

*Fraudulent Transfers Related to the Closing of Workout Clubs*

77.     A large portion of the Debtor's creditors are landlords who leased space to wholly-owned entities of the Debtor.

78.     The landlords also relied on guarantees from the Debtor, third party guarantors, or other obligors under the leases.

79.     The Debtor sometimes convinced third parties or prior gym owners to guarantee the applicable lease. In other instances, the Debtor purchased workout clubs from sellers (such as Bally) and assumed the seller's obligations under existing leases. While the Debtor was obligated to remove the seller from the existing leases, the Debtor usually failed to effectuate this removal, leaving the seller obligated thereunder.

80.     Landlords, guarantors, and obligors of the Debtor and Debtor's subsidiaries all relied on the Debtor's commitment to run a successful workout club at

14

the particular location and through a particular wholly owned subsidiary, who was often the actual tenant under the applicable lease.

81.     When a Debtor decided to close a workout club, the Debtor was essentially "giving up" on that particular subsidiary and also on that particular club location.

82.     At the direction of Harold Dixon and  Cape Capital the Debtor would transfer the defunct workout club's assets—owned by that particular subsidiary of the Debtor—to one of the Debtor's other wholly owned subsidiaries. These fraudulently transferred assets included, members, membership lists, club equipment, employee work, employees, payroll, personal training sessions, cash, receivables in the form of electronic funds transfers for scheduled membership payments, which were drawn from member's accounts, and other assets.

83.     Simultaneously with these fraudulent transfers, the Debtor's wholly owned subsidiary, who was the actual tenant under the lease, would stop making rent payments to the landlord, resulting in a default.

84.     The landlord would sue the tenant for payment of the debt created by the lease only to find that all of the assets of the tenant had already been transferred to another wholly owned subsidiary of the Debtor. The landlord was then forced to pursue the guarantors and obligors of the tenant. Furthermore, the landlords, guarantors, and obligors all pursued fraudulent transfer and other claims against the Debtor. A large portion of claims made in this bankruptcy arrose in this manner.

15

85.     Every time the Debtor decided to close a work-out club, the Debtor engaged in fraudulent transfers of assets from the defunct subsidiary to another subsidiary. These cross-entity transfers were done with the actual intent to hinder, delay, and defraud the creditor landlords.

86.     At the direction of Dixon and  Cape Capital, the Debtor engaged in these cross-entity fraudulent transfers for virtually the entire time that the Debtor was in business.

87.     The Debtor's cross-entity fraudulent transfers also harmed third party guarantors of the lease. This left the guarantors with no recourse except bringing suit against the Debtor and its principals for fraudulent transfer and other claims.

88.     For example, on October 24, 2012, Blast Schaumburg received a letter detailing Blast Schaumburg's default of its lease at the Farmgate Shopping Center in Chicago, IL. As of October 24, 2012, Blast Schaumburg owed $52,499.60. On June 25, 2014, R. Grands Holding, LLC, filed an action for breach of commercial lease against Blast Schaumburg and Blast Fitness Group. After a successful motion for summary judgment, R. Grands Holding, LLC, obtained a judgment in the amount of $360,403.91 from the Circuit Court of Cook County on April 23, 2015. On June 25, 2015, R. Grands Holding filed a complaint in Middlesex Superior Court to enforce against Blast Fitness Group the judgment it had obtained. R. Grands Holding obtained a preliminary injunction, which ordered "that the defendants Blast Fitness Schaumburg, LLC and Blast Fitness Group, LLC shall not transfer or otherwise alienate any real or personal property to any of the reach and apply defendants." After amending the Complaint, R.

16

Grands Holding requested and was given another preliminary injunction, this time against more of the related entities.

89.    This pattern was repeated with numerous other club locations. Closed work-out clubs where the Debtor engaged in fraudulent transfers of members, membership lists, club equipment, employee work, employees, cash, receivables in the form of electronic funds transfers for scheduled membership payments include the following:

| Entity | Location |
| --- | --- |
| Blast Fitness Group Niles LLC | 8526-T Golf Road, Niles, Illinois |
| Blast Fitness Acquisition LLC | Blast Fitness Cambridge LLC: 1815 Massachusetts Avenue, Cambridge MA |
| Blast Fitness Acquisition LLC | 1031 New Britain Avenue, West Hartford CT |
| Blast Fitness Jefferson LLC | 1601 S Jefferson Avenue, St. Louis MO |
| Blast Fitness Schaumburg, LLC | 560 S.Roselle Rd., Schaumburg, IL 60193 |
| Blast Fitness Glendale Heights, LLC | 127 East North Ave Glendale Heights, IL 60139 |
| Blast Fitness Humble, LLC | 19304 Highway 59, Humble, TX 77338 |
| Blast Fitness Parliament, LLC | 11799 West Ave, San Antonio, TX 78216 |
| Blast Fitness Naperville, LLC | 790 Royal St. George Drive, Naperville, IL 60661 |
| Townline Plaza Medford | 285 Middlesex Avenue, Medford, MA 02155 |
| Blast Fitness Tewksbury, LLC | 533 Main Street, Tewksbury, MA 01876 |

90.    In June 2015, Debtor closed two Fresno, CA, locations at Shaw and Blythe, leaving only the Clovis and Blackstone locations in that city.

17

91.     Further to this scheme, in April 2015, Debtor announced that it was closing 10 clubs. According to an operations manager for Debtor, none of the closed clubs had a third-party investor associated with them. Many of these clubs were closed even though they were breaking even and had higher revenue from personal training.

92.     The sudden club shutdowns created chaos for the Blast Fitness management team, who tried to shift both customers and employees to open locations.

93.     One month before the announcement, Debtor offered a buy-one-get-one-session-free promotion for its members at the Glendale Heights club. Many clients purchased a package, only to learn weeks later that the club was closing, and that they (and their trainers) would have to travel 20 minutes by car to redeem the sessions at the Blast Lombard location.

94.     Even a closed club still had value. EFTs, membership lists, and the members themselves were valuable.

95.     The transfer of them to other unrelated Blast entities were fraudulent transfers as to the closed club's landlord.

96.     Dixon, using one of Blast's many subsidiaries, would shut down otherwise profitable clubs to strip assets away and burden the worthless club's LLC with the liabilities.

97.     The Blast club in North Dallas was closed in order to to avoid and hinder creditor claims.

98.     Around March 28, 2015, Blast North Dallas announced to its members that the club was closing.

99.    To avoid paying the remainder of its outstanding debts (including its lease), Blast Fitness Acquisition closed the North Dallas club and sold the club's assets.

100.   On April 17, 2015, Blast Acquisition transferred to You Fit, LLC the following assets: Blast Acquisition's right to receive membership fees at a Texas Blast workout club; the membership list, including contact information; membership contracts; and all databases and records related to the above assets.

101.   Blast Acquisition reserved the right to receive all payments from club members for any personal training sessions.

### Bally Asset Purchase—Misappropriation and Misuse of Real Estate

102.   In 2012, Dixon became embroiled in litigation concerning the Blast gyms in New England that were using the name of a competitor.

103.   In part to make Blast look legitimate, Blast needed to use its name and expand to other regions of the country. A large transaction with a national chain that was looking to exit the industry would be perfect. Bally Total Fitness ("Bally") had already been through two bankruptcies, and its footprint had shrunk from 400 clubs down to fewer than 75.

104.   To facilitate the acquisition, Dixon turned to his trusted personal lawyer, John LeClair and his firm Goodwin Procter LLP.

105.   Goodwin Procter LLP and John LeClair served as counsel to the Debtor and the Debtor's wholly owned subsidiary Blast Fitness Acquisition LLC ("Blast Acquisition").

19

106.    Goodwin Procter LLP and John LeClair owed the Debtor a duty of loyalty and an obligation to act in the Debtor's best interests.

107.    Goodwin Procter LLP and John LeClair owed the Debtor a duty to represent the Debtor in a manner consistent with the standard of care for similarly situated attorneys.

108.    Goodwin Procter LLP helped draft an asset purchase agreement dated April 10, 2012 (the "Asset Purchase Agreement") between the Debtor and Blast Acquisition, on the one hand, and Bally Total Fitness of the Mid-Atlantic, Inc., Bally Total Fitness of Greater New York, Inc., and Bally Total Fitness of the Midwest, Inc. (collectively "Bally"), on the other.

109.    Under the Asset Purchase Agreement, the Debtor (through Blast Acquisition) acquired 39 workout clubs from Bally. This included 39 workout clubs at the locations identified on the attached list, attached hereto and incorporated herein as Exhibit A.

110.    Under the Asset Purchase Agreement, Debtor was also supposed to receive 28 residual revenue streams associated with 28 closed Bally's workout clubs (the "Residual Bally Revenue Streams"). The closed Bally workout clubs are identified on the attached list, attached hereto and incorporated herein as Exhibit B. The Residual Bally Revenue Streams were derived from monthly electronic fund transfers of members of the 28 closed workout clubs.

111.    On information and belief, the Debtor did not receive the full benefit of The Residual Bally Revenue Streams.

20

112.    On information and belief, Cape Capital and Harold Dixon directed that the Bally Residual Revenue Streams be transferred to Harold Dixon,  Cape Capital, or an entity created to benefit Harold Dixon,  Cape Capital, or other third parties.

113.    In addition to the 39 workout clubs, and the Residual Bally Revenue Streams, under the Asset Purchase Agreement, the Debtor was also supposed to receive certain commercial real estate from Bally, including the commercial real estate at the following locations: 12703 Dorsett Road, Maryland Heights, Missouri; 1031 New Britain Avenue, West Hartford Connecticut; and 2715 North Belt Line Road, Irving, TX (collectively, the "Bally Real Estate"). The Bally Real Estate was to be "sold pursuant to the terms of a separate purchase agreement (the 'Real Estate Purchase Agreement') for an aggregate purchase price of $1,000,000 to an entity identified by Parent [the Debtor] prior to Closing." Asset Purchase Agreement, at 3.

114.    Goodwin either failed to determine whether such a Real Estate Purchase Agreement was prepared in accordance with the agreement that it had been retained to draft, and for which it received considerable consideration, or Goodwin knew that the real estate was being diverted for the gain of one of Goodwin's other clients—Harold Dixon—and allowed the transaction to occur, despite the unwaivable conflict that left Debtor effectively unrepresented.

115.    On April 25, 2012, Harold Dixon formed CapeCapital Irving LLC by filing a Certificate of Formation with the Texas Secretary of State.

116.    On April 25, 2012, Harold Dixon formed CapeCapital West Hartford LLC by filing a Certificate of Formation with the Connecticut Secretary of State.

117.    On April 25, 2012, Harold Dixon formed CapeCapital Maryland Heights LLC by filing Articles of Organization with the Missouri Secretary of State.

118.    On April 26, 2012, Bally Total Fitness Corporation, a Delaware Corporation, conveyed commercial real estate located at 12703 Dorsett Road, Maryland Heights, Missouri, to Defendant Capecapital Maryland Heights, LLC. On information and belief, woefully inadequate consideration of $340,000, was paid by the defendant transferees for this transfer, and/or the Debtor paid the consideration for this transfer of real estate, while Defendant Capecapital Maryland Heights, LLC received the real estate.

119.    On December 31, 2014, Defendant Capecapital Maryland Heights, LLC, conveyed the 12703 Dorsett Road real estate to Defendant No. 10, LLC. On information and belief, the consideration paid by Defendant No. 10, LLC, to Defendant Capecapital Maryland Heights, LLC was at least $800,000.

120.    On information and belief, Capecapital Maryland Heights, LLC then transferred or distributed these funds to Harold Dixon or to other unknown third parties, named here as John Doe Defendants.

121.    On information and belief, Dixon and  Cape Capital directed that the Debtor's workout club located at 12703 Dorsett Road, Maryland Heights, Missouri, be closed solely so that Capecapital Maryland Heights, LLC could sell the real estate to Defendant Defendant No. 10, LLC.

122.    Harold Dixon, in his capacity of sole managing member of Defendant Capecapital Maryland Heights, LLC, executed the deed to transfer 12703 Dorsett Road to Defendant No. 10, LLC.

123.    On March 3, 2012, Bally Total Fitness Corporation, a Delaware Corporation, conveyed commercial real estate located at 1031 New Britain Avenue, West Hartford, Connecticut, to Defendant Capecapital West Hartford LLC. On information and belief, woefully inadequate consideration of $340,000 was paid by the defendant transferees for this transfer, and/or the Debtor paid the consideration for this transfer of real estate, while Defendant Capecapital West Hartford LLC received the real estate.

124.    On June 26, 2014, Defendant Capecapital West Hartford LLC conveyed the commercial real estate located at 1031 New Britain Avenue, West Hartford Connecticut to Defendant WH-ELM LLC. On information and belief, the consideration paid by Defendant WH-ELM LLC to Defendant Capecapital West Hartford LLC was at least $750,000, and possibly more. The Town of West Hartford, Connecticut valued this this commercial real estate at $2,470,900 during the year 2014.

125.    On information and belief, Capecapital West Hartford LLC, at the direction of Harold Dixon, then fraudulently transferred or distributed the sale proceeds to Harold Dixon or to other unknown third parties, named here as John Doe defendants.

126.    On information and belief, Dixon and Cape Capital directed that the Debtor's workout club located at 1031 New Britain Avenue, West Hartford Connecticut

be closed solely so that Capecapital West Hartford LLC could sell the real estate to

Defendant WH-ELM LLC.

127.    On April 30, 2012, Bally Total Fitness Corporation, a Delaware

Corporation conveyed commercial real estate located at 2715 North Belt Line Road,

Irving, TX, to Defendant Capecapital Irving, LLC. On information and belief, woefully

inadequate consideration of $340,000, was paid by the defendant transferees for this

transfer and/or the Debtor paid the consideration for this transfer of real estate, while

Defendant Capecapital Irving, LLC received the real estate. At the time of this transfer,

Dallas County TX valued this this commercial real estate at $2,388,890 during the year

2013.

128.    On December 31, 2013, Defendant Capecapital Irving, LLC conveyed the

commercial real estate located at 2715 North Belt Line Road, Irving, TX, to Defendant

Klopro-Belt LLC. On information and belief, the consideration paid by Defendant

Klopro-Belt LLC to Defendant Capecapital Irving, LLC was at least $1,432,500, and

possibly more. At the time of this transfer, Dallas County TX valued this this

commercial real estate at $2,388,890 during the year 2013.

129.    On information and belief, Capecapital Irving LLC, at the direction of

Harold Dixon, then fraudulently transferred or distributed the sale proceeds to Harold

Dixon or to other unknown third parties, named here as John Doe defendants.

130.    On information and belief, Dixon and  Cape Capital directed that the

Debtor's workout club located at 2715 North Belt Line Road, Irving, TX, be closed solely

so that Capecapital Irving, LLC could sell the real estate to Defendant Klopro-Belt LLC.

24

131.    The Debtor's principals Harold Dixon and Cape Capital failed to

designate an entity owned by the Debtor to purchase the Bally Real Estate, failed to

cause the Debtor to purchase the Bally Real Estate. These failures were a breach of their

duty of care, a breach of their duty of loyalty.

132.    The Debtor's principals Dixon and Cape Capital failed to disclose to the

Debtor's members that Harold Dixon intended to take title to the Bally Real Estate

through separate limited liability companies not owned by the Debtor.

133.    The Debtor's principals Harold Dixon and Cape Capital Frank

Hennessey, failed to disclose that Harold Dixon would reap a benefit both individually

and for seperate limited liability companies owned by Harold Dixon but not owned by

the Debtor. This was a conflict of interest transaction.

134.    The Debtor's principals Cape Capital and Harold Dixon failed to present

the Debtor's members with conflict of interest waivers as required by the Debtor's

Operating Agreement, and as required by Massachusetts law.

135.    On information and belief, Goodwin Procter LLP and John LeClair failed

to advise the Debtor or the Debtor's principals that allowing Harold Dixon to take title

to the Bally Real Estate through Defendants Capecapital Maryland Heights, LLC,

Capecapital West Hartford LLC, and Capecapital Irving, LLC would be a breach of the

fiduciary duty of care, a breach of the fiduciary duty of loyalty, a conflict of interest

transaction, theft of company opportunity, and tortious interference with contract.

136.    On information and belief, Goodwin Procter LLP and John LeClair failed

to inform other principals and members of the Debtor that Harold Dixon planned to

25

take title to the Bally Real Estate either individually, or through various LLCs that

Dixon intended to form (Defendants Capecapital Maryland Heights, LLC, Capecapital

West Hartford LLC and Capecapital Irving, LLC).

137.    On information and belief, Goodwin Procter LLP and John LeClair failed

to inform other principals and members of the Debtor that Harold Dixon did, in fact,

take title to the Bally Real Estate through Defendants Capecapital Maryland Heights,

LLC, Capecapital West Hartford LLC, and Capecapital Irving, LLC.

138.    On information and belief, Goodwin Procter LLP and John LeClair failed

to disclose to the Debtor a material conflict of interests between their legal

representation of the Debtor and Harold Dixon.

139.    On information and belief, Goodwin Procter LLP and John LeClair drafted

the Asset Purchase Agreement in a way that substantially benefited Harold Dixon, who

they also represented at the time that the Asset Purchase Agreement was drafted. This

was to the detriment of their client, the Debtor, and for the benefit of their other client,

Harold Dixon.

140.    On information and belief, this was an unwaivable conflict. To the extent

that the conflict was waivable, the Debtor was not given an opportunity and did not

waive that conflict.

141.    It was a significant ethical lapse and error of oversight, for LeClair's firm

Goodwin to take on multiple representations rife with conflicts and duties owed to

current and/or past clients.

26

142.    On information and belief, Goodwin Procter LLP and John LeClair breached their duty of loyalty to the Debtor when they failed to advise the Debtor that the purchase of the Bally Real Estate was a corporate opportunity of the Debtor and a contractual right of the Debtor.

143.    On information and belief, Goodwin Procter LLP and John LeClair affirmatively advised the Debtor that Harold Dixon could, legally and without violating any duties to the Debtor, take title to the Bally Real Estate either individually, or through various LLCs that Dixon intended to form (Defendants Capecapital Maryland Heights, LLC, Capecapital West Hartford LLC and Capecapital Irving, LLC).

144.    The Debtor paid substantial fees to Goodwin Procter LLP and John LeClair as follows: on January 25, 2013, Debtor paid Goodwin $175,000. On August 30, 2013, Debtor paid Goodwin $375,000. On information and belief, Goodwin received payments from Debtor or with funds belonging to Debtor or one of Debtor's subsidiaries.

145.    The Debtor did not receive reasonably equivalent value in exchange for the legal fees that it paid to Goodwin Procter LLP and John LeClair. The result of Goodwin Procter LLP and John LeClair's representation was that the Bally's Real Estate was fraudulently transferred away from the Debtor entities Harold Dixon planned to take title to the Bally Real Estate either individually, or through various LLCs that Dixon intended to form (Defendants Capecapital Maryland Heights, LLC, Capecapital West Hartford LLC and Capecapital Irving, LLC).

27

146.    Goodwin's failure to advise Debtor with respect to the real estate transfers

caused a corporate opportunity to be diverted, a significant amount of corporate funds

to be diverted to subsidize Dixon's acquisition of real estate, and ultimately millions of

dollars of damages when that real estate was ultimately sold at a tremendous gain.

*Conflict of Interest Lease Transactions*

147.    On April 20, 2012 Debtor entered into a lease with Capecapital Irving LLC

as landlord and the Debtor or Blast Acquisition, as tenant. This transaction was a

conflict of interest transaction, whereby the Debtor and Blast Acquisition became

obligated to pay a potentially over-market amount of rent. On information and belief no

disclosures of the conflict of interest, or waivers were completed by the Debtor or its

executives.

148.    On information and belief,  Cape Capital and Dixon directed the Debtor to

enter into, or assume obligations of, leases with Defendants Capecapital Maryland

Heights, LLC, as well as Capecapital West Hartford LLC. These leases were conflict of

interest transactions, whereby the Debtor, Blast Acquisition, or another Blast Subsidiary

became obligated to pay a potentially over-market amounts of rent. On information and

belief no disclosures of the conflict of interest, or waivers were completed by the Debtor

or its executives.

149.    On information and belief,  Cape Capital and Harold Dixon directed the

Debtor, Blast Acquisition and/or the Debtor's wholly owned subsidiaries to make lease

payments to Defendants Capecapital Maryland Heights, LLC, Capecapital Irving LLC

and Capecapital West Hartford LLC, with the intent to delay, and defraud the Debtors'

other creditors. Such lease payments were made while the Debtor was insolvent, or

such payments contributed to the Debtor's insolvency. Such lease payments amounted

to fraudulent transfers.

150.    On information and belief, Defendants Capecapital Maryland Heights,

LLC, Capecapital Irving LLC and Capecapital West Hartford LLC, breached their lease

agreements with the Debtor, Blast Acquisition and/or the Debtor's wholly owned

subsidiaries when they terminated these leases early. Defendants Capecapital Maryland

Heights, LLC, Capecapital Irving LLC terminated these leases early for the express

purpose of allowing Defendants Capecapital Maryland Heights, LLC, Capecapital

Irving LLC to sell real estate wrongfully taken from the Debtor as part of the transaction

with Bally.

### Dixon Uses NewFit and LexFit to Siphon Off Best Clubs

151.    In 2012, Dixon and Blast were sued by Elizabeth Beninati ("Beninati") for

millions of dollars of damages.

152.    In late 2012, Dixon began a two-pronged strategy to conceal the assets at

risk. For Blast, Dixon moved the most profitable aspects of the business to brand new

LLCs that he created for no other purpose than to divert company assets and shield

them from creditors. For himself, he would hire a boutique law firm to help transfer his

multimillion dollar properties in Weston and Cape Cod.

#### *LexFit Transfer*

153.    On December 6, 2012, Defendants Dixon, Cape Capital, and Hennessey

transferred all of Debtor's interests in 16 of the more profitable clubs to LexFit, LLC, a

29

company which would be created shortly thereafter and would be managed by Cape

Capital and Auburndale Fitness Group.

154.    As part of the transfer, Debtor transferred its interests in the operational

LLC entities for the gym clubs at the following locations:

     a.   Phoenix (Camelback Road), AZ

     b.   Glendale, AZ

     c.   Phoenix (Indian School Road), AZ

     d.   Mesa, AZ

     e.   Phoenix (Union Hills), AZ

     f.   Margate, FL

     g.   Chicago (Ashland Ave), IL

     h.   Dolton, IL

     i.   Glendale Heights, IL

     j.   Dunning, IL

     k.   Lombard, IL

     l.   Naperville, IL

     m.   Niles, IL

     n.   Rochester (North), MN

     o.   Rochester (South), MN

     p.   St. Cloud, MN

155.    Debtor received no or nominal consideration in exchange for the transfer.

156.     Many of these clubs, including Phoenix (Indian School Road) were highly profitable.

157.     This transfer was not for reasonably equivalent value. This transfer also constituted civil theft and corporate waste.

158.     This transfer was also a breach of fiduciary duty for Dixon, Cape Capital, and Hennessey.

159.     Dixon also aided and abetted Cape Capital and Hennessey's breach of fiduciary duty.

160.     At the time of the transfer, Debtor was insolvent and was operating in the zone of insolvency.

161.     It is unknown which attorney drafted the transfer agreement, but to the extent the attorney who drafted the agreement represented Debtor in some capacity, that was a breach of duty.

*Newfit Transfer*

162.     On January 30, 2013, Defendants Dixon, Cape Capital, and Hennessey transferred all of Debtor's interests in 8 of the more profitable clubs to Newfit, LLC, a company which would be created shortly thereafter and would be managed by Dixon and Cape Capital.

163.     As part of the transfer, Debtor transferred its interests in the operational LLC entities for the gym clubs at the following locations:

a.   West Roxbury (Harlem Corners), MA

b.   Burbank, IL

31

    c.   Cambridge, MA

    d.   WOW Foxboro, MA

    e.   Lawrence, MA

    f.   Chicago (Jewell), IL

    g.   Saugus, MA

    h.   Downers Grove, IL

164.    Under the agreement, Debtor was supposed to receive $2,571,000 in exchange for the transfer. This translates to an average value of $321,000 per club. However, on information and belief, Debtor did not receive full consideration.

165.    Many of these clubs, including Phoenix (Indian School Road) were highly profitable or were about to become highly profitable.

166.    Newfit was supposed to be a separate company that operated clubs under the Blast name. It loaned money to Debtor, and when it was shut down, assets were transferred to retire the loan and debt was assumed.

167.    Goodwin drafted the asset transfer agreement. This was a further breach of Goodwin's duties, as the contract worked to the benefit of an insider-controlled entity and to Blast's detriment.

### *LexFit to Newfit Transfer*

168.    On January 30, 2013, the same day as the Newfit Acquisition, LexFit transferred 8 of the clubs previously acquired from Debtor to Newfit, LLC, even though as stated above, Newfit had not yet been created.

169.    As part of the transfer, Lexfit transferred its interests in the operational

LLC entities for the gym clubs at the following locations:

     a.  Phoenix (Camelback Road), AZ

     b.  Phoenix (Indian School Road), AZ

     c.  Mesa, AZ

     d.  Phoenix (Union Hills), AZ

     e.  Rochester (North), MN (closed club revenue)

170.    Under the agreement, LexFit supposedly received $820,000 from NewFit.

This translates into an average value of less than $200,000, without taking into account

the closed club revenue from the Rochester (North) club. (Under Minnesota law, the

transfer of the closed club revenue was illegal). However there is no evidence that

Newfit actually paid LexFit anything.

171.    Goodwin drafted the LexFit-Newfit transfer agreement, even though

Debtor was not actually a party to the agreement. This was a further breach of

Goodwin's duties, as the contract did not benefit Blast and only furthered the

fraudulent transfers and breaches of duty that were taking place.

172.    In aggregate, Newfit was supposed to pay $3,391,000 for the acquisition of

13 clubs. This translates to an average purchase price of $260,000 per club. However,

Newfit never paid the full amount of the acquisition price.

173.    The failure to pay full amount constitutes a fraudulent transfer.

174.    The failure to pay the full amount also constitutes theft of corporate opportunity, corporate waste, and was a breach of the fiduciary duties of Capte Capital, Hennessey, Moran, and Dixon.

175.    But regardless of whether the full amount of consideration was paid, the transfer of Debtor's clubs to Newfit constituted a fraudulent transfer and an unfair and lopsided insider transaction in which Blast's interests were not adequately represented.

176.    A few years later, many of the clubs acquired by Newfit were sold to Ed Eskandarian for a substantial markup. Debtor has thus been injured by the amount that was realized by Newfit, rather than itself.

177.    On information and belief, Dixon continues to personally receive annual payments of $500K per year from Ed Eskandarian, with several years of payments remaining. These payments equitably belong to Debtor.

178.    Tellingly, unlike the prior club transactions by the Debtor, the Newfit and LexFit transactions were not publicly announced. The siphoning of assets is not exactly something that you broadcast to creditors.

179.    According to the unsigned minutes that supposedly memorialize a meeting on January 24, 2013 and the decision to transfer of clubs from Debtor to Newfit, which identifies neither the participants nor the secretary:

> Blast has a cash need to due operational short falls and debt payments due. A capital infusion of $3 million is needed to cover the cash needs of Blast. Harry, Steve & Frank discussed how to raise capital needed, either capital call or the sale of clubs and the partners opted not to call capital. It was agreed to sell clubs from Blast Fitness Group, LLC and LexFit, LLC to NewFit, LLC for the amounts below. NewFit, LLC will pay cash for the clubs below.

34

- Harlem Corners
- Burbank
- Cambridge
- Foxboro
- Lawrence
- Jewel
- Saugus
- Downers Grove
- North Rochester
- Mesa
- Camelback
- Union Hills
- Indian School

Total $3,391,000.00

180.    According to the metadata of the meeting minutes provided to Debtor's counsel and then to the Trustee, the minutes were created on March 4, 2013 by Tom Moran. The minutes were further revised on April 5, 2016, shortly after the bankruptcy was filed.

181.    The minutes do not mention the transfer of clubs to LexFit.

### *Actual Fraudulent Intent*

182.    As set forth above, the diversion of corporate assets to Newfit were all done after Beninati had sued Blast.

183.    Dixon began to transfer Blast assets away from Blast (and his personal assets), all with the actual intent to delay and hinder creditors.

184.    Blast was always insolvent, in the zone of insolvency and insufficiently capitalized.

35

185.    Debtor's insolvency was true on both a consolidated and unconsolidated

basis. For example, at the end of 2014, on an unconsolidated based, Blast Fitness Group,

LLC had assets of $1.3 million and liabilities of around $10 million, for a negative value

in excess of $8.5 million. Blast Fitness Acquisition, LLC also was deeply insolvent. It had

assets at the end of 2014 of $1.9 million and liabilities of more than $6 million (including

an intercompany payable of $1.5 million), for a negative value in excess of $4 million.

186.    Debtor could not pay debts as they arose in the ordinary course, and

relied on strategy of shifting assets from one club to another, in disregard of corporate

structure and creditors of particular clubs. Favored entities were kept funded and sold

to the benefit of NewFit and Dixon. Disfavored clubs received no investment, defaulted

on leases and loans, were stripped of any remaining assets, and folded.

187.    Dixon engineered loans to come due with companies either still not

profitable, approaching break even, or having just reached break even. He then

transferred the clubs to one of his own entities in exchange for assumption or

cancellation of the debt.

188.    The disposition of clubs at all times was primarily intended to further the

interests of Dixon and Hennessey, and the entities they managed, owned, or otherwise

controlled. As officers and managers of Debtors, Dixon and Hennessey, and the entities

they managed, owned, or otherwise controlled, were acting solely out of self-interest

and not in any way attempting to benefit the Debtor. To the contrary, the disposition of

clubs by Dixon and Hennessey, and the entities they man aged, owned, or otherwise

controlled, looted the Debtor and saddled creditors with massive debts and no assets or cash flow to pay them.

*Newfit Further Acquisition*

189.   On or about January 1, 2015, Blast Acquisition Group sold 9 of the remaining and more profitable clubs to Newfit for $1,041,118.47 and assumption debt. This translates into $116,000 per club.

190.   As part of the transfer, Debtor transferred its interests in the operational LLC entities for the gym clubs at the following locations:

     a.   Webster, TX

     b.   Houston (North Shepherd), TX

     c.   Humble, TX

     d.   East Providence, RI

     e.   West Allis, WI

     f.   Cudahy, WI

     g.   Medford, MA

     h.   Fresno (Clovis), CA

     i.   Fresno (North Blackstone Avenue), CA

191.   Defendant Peter Fenn represented Newfit, not Debtor, in the transaction.

192.   Attorney Fenn has represented "various elements of Blast" and for "various matters" "off and on" for a significant period of time. Indeed, Fenn signed the petition as General Counsel.

193.    Fenn consistently held himself out as Debtor's counsel. He appeared as counsel for Blast Fitness Cambridge, LLC, replacing Ira Grolman who would later appear in this bankruptcy as Debtor's counsel.

194.    Fenn admits that he has been Debtor's counsel. He admits that he also received money from the Debtor and its principals to pay Ira Grolman for bankruptcy filing.

195.    Attorney for "various elements of Blast" and for "various matters" "off and on" since at least 2014.

196.    Debtor transferred all intellectual property in the Blast Fitness operation to Newfit without consideration.

197.    As part of this transaction Newfit provided purchase money financing to the purchaser in the amount of two million dollars and received a promissory note or similar instrument for the purposes of paying back these amounts Newfit.

### *Dixon Family Fraudulent Conveyances*

198.    After being sued by Beninati, Dixon began to move and conceal his personal assets too. To this end, Dixon retained Currier Law Office LLC, a boutique law firm specializing in "estate planning" for high net worth individuals and families.

199.    On or around December 24, 2012, Defendants Harold R. Dixon and Juliet J. Dixon fraudulently conveyed the real property located at 25 Green Lane Weston MA, to defendants Michael J. Caffey and Thomas F. Walsh as trustees of the following defendant trusts in equal shares: The Harold R. Dixon, IV GST Trust; George L. Dixon

38

GST; William A. Dixon GST Trust; John E. Dixon GST Trust. On information and belief,

no or nominal consideration was paid by the defendant transferees for this transfer.

200.    On or around December 24, 2012, Harold Dixon and Juliet J. Dixon

transferred the real property located at 120 Point Isabella Road, Barnstable MA to Juliet

J. Dixon, individually. On information and belief, no or nominal consideration was paid

by the defendant transferees for this transfer. In 2012, the town of Barnstable appraised

this real property at $3,258,200.

201.    On May 12, 2015, Defendants Harold R. Dixon and Juliet J. Dixon

transferred the real property located at 63 Cart Path Road, Weston MA to Michael J.

Caffey as trustee of 63 Cart Path Road Nominee Trust. On information and belief, no or

nominal consideration was paid by the defendant transferees for this transfer.

202.    On May 12, 2015, Defendant Harold Dixon resigned as the Trustee of The

31 Green Lane Nominee Trust is a trust and appointed Defendant Thomas F. Walsh to

serve as trustee of The 31 Green Lane Nominee Trust. On information and belief, no or

nominal consideration was paid by the defendant transferees for this transfer.

### *Jewel Corporate Opportunity*

203.    On December 21, 2011, Harold Dixon formed Defendant Capecapital

Jewel LLC.

204.    On December 27, 2011, Defendant Capecapital Jewel LLC purchased

commercial real estate located at 6057 S. Western Avenue, Chicago, Illinois for an

unknown amount. On information and belief, neither Harold Dixon, Cape Capital, nor

Capecapital Jewel LLC presented this purchase opportunity to the Debtor or any of the

Debtor's wholly owned entities.

205.    Defendant Capecapital Jewel LLC leased space to Blast Acquisition or

another wholly owned entity of the Debtor for the purposes of housing a Blast Fitness

Gym.

206.    Cape Capital controlled the Debtor, and Dixon controlled Cape Capital.

Cape Capital and Dixon are also managers of Newfit.

207.    Upon information and belief, Hennessey was the Chief Financial Officer

of the Debtor.

208.    Moran was either a member or officer of the Debtor. Moran held himself

out as Debtor's Director of Finance. He also held the same role with Newfit.

209.    Dixon, Hennessey, and Moran (together, the "Non-Entity Defendants"),

wrote checks on behalf of the Debtor and otherwise had control over the distribution of

funds from the Debtor's accounts.

210.    Bank account records show multiple electronic transfers of funds from the

Debtor to Newfit and Blast Group PT. The bank account records also show transfers to

Newfit MGMT, Blast Acquisition, and several Illinois-based, Blast-related entities.

211.    On January 31, 2013, Blast Fitness Group assigned to NewFit "all right,

title and interest of [Debtor] in, to, and under the Management Agreement."

212.    Under the management agreement, Debtor managed the three clubs

located in Mashpee, West Roxbury, and Needham in exchange for a management fee of

50% of gross revenue (with maximum limits on lease and labor costs). The term ended

January 2018. Debtor had assignment rights. If the owners terminated, Debtor was entitled to $2M.

213.    While the clubs continued to be owned by other non-Blast Fitness LLCs, Debtor had the rights to manage the clubs and use its own trade name.

214.    By November, the Needham club was in dire straights. Debtor and Needham amended the agreement so that in exchange for cancelling the Management Agreement solely with Needham, Debtor would get Needham's membership lists. Needham needed to pay off a creditor, and to do so, was trading any assets/collateral for the forgiveness of debt.

215.    Meanwhile Debtor's management fee went to 75% of gross revenue for the Mashpee and West Roxbury clubs. Debtor became a creditor of both clubs by loaning them sufficient funds to cover the loan maintenance payments each of the clubs had, effectively negating the club owner's 25% of gross revenue.

216.    Effectively, on January 31, 2013, NewFit owned all the benefits of the owning the Mashpee and West Roxbury Clubs. Debtor transferred these rights (the right to the clubs gross revenues) away in exchange for $10 consideration and the assumption of the liabilities of the management contract (managing the club). Debtor kept any other liabilities or obligations related to the club that it had assumed.

217.    On January 31, 2014, Debtor and Blast Acquisition entered into a settlement agreement with Anzaroot Acquisition LLC, TD Bank, and CHF-Middlebury LLC d/b/a Catalyst Health & Fitness. Debtor and Blast Acquisition operated a club as the successor Tenant to Bally's. Blast would transfer the site, the memberlist and

41

member contracts, and the equipment to Catalyst. In return, Bally and Blast were released from their obligations as tenant/successor-tenant.

218.    On January 31 2015, Blast Fitness Acquisition transferred the Buffalo Club's membership list to Buff Fit, LLC, a New York LLC. In exchange, Blast Acquisition kept 50% of the revenue of membership dues for one year, reduced by any refunds requested or penalties incurred related to the transfer. Blast then shuttered the doors of the club.

### *Strategy to Leave Third-Parties on the Hook for Debts*

219.    As often as possible, Dixon, Hennessey and Moran consciously chose to structure transactions in a way that would help insulate Debtor from creditor claims. For example, Dixon failed to take Bally off many of the leases that had been transferred as part of the Bally Asset Transfer. When Dixon stopped paying rent, Bally was sued by landlord.

220.    Of course, Debtor was required to indemnify Bally for non-payment of rent, and thus the strategy has only served to delay creditors and change their identity.

221.    Dixon, Hennessey and Moran allowed outside investors to take stakes in individual clubs. But they distinguished between those clubs versus the clubs that they wholly owned. This favoritism was at the expense of third-parties and creditors.

222.    For example, Robert Goulart invested $561,000 with Blast Fitness Group, LLC for a share of three fitness clubs: Irving Park, IL, Dolton, IL, and Union Hills. Prior to those, Goulart was invited to invest in a new club being opened in Plymouth. This deal was never consummated. But Debtor's management had Mr. Goulart sign a lease

guarantee in anticipation of the Plymouth deal. At the last minute, this deal cancelled and the club was transferred away from Blast. Mr. Goulart was left as a lease guarantor and the Plymouth club on information and belief stopped paying rent.

223.    In the closed club at Irving Park, Mr. Goulart and other investors had guaranteed equipment, which had been financed. Hennessey stated that the equipment would be moved to another gym managed by Jimmy Moses. But instead paying off debt, Hennessey and Dixon just took the money from the equipment for themselves, leaving the original guarantors liable for the equipment and with no assets to satisfy those guarantees.

### *Other transfers*

224.    On July 4, 2014, Debtor transferred the membership list in a Houston club for $288,000.

225.    Sometime in 2014, Debtor transferred the membership list in a San Antonio club for $130,898.

226.    On May 1, 2015, just days after the judgment entered against Blast Fitness Schaumburg LLC, the Defendants transferred the membership list and equipment worth $595,466.62 for the Schaumburg club to Newfit. $407,000 of this was on account of an antecedent debt owed to insider Newfit. The remaining $188,000 owed to ABC Financial and Capital Capital. To the extent that this transfer was in exchange for assumption of third party debt, it was a preference. To the extent it was not for reasonably equivalent value, it was a fraudulent transfer or a preference to an insider. It was also done with the intent to delay and hinder creditors, including the landlord for

the Schaumberg club. Notably, Peter Fenn represented Newfit in this transaction, even though he held himself out as General Counsel for Blast Fitness.

227.    On July 2, 2015, Debtor transferred the memberships for an unspecified closing club worth $200,000 to Newfit, purportedly for forgiveness of debt. To the extent that this transfer was in exchange for forgiveness of debt, it was a preference to an insider. To the extent it was not for reasonably equivalent value, it was a fraudulent transfer.

228.    On July 2, 2015, Debtor transferred the memberships for an unspecified closing club worth $39,000 to Newfit, purportedly for forgiveness of debt. To the extent that this transfer was in exchange for forgiveness of debt, it was a preference to an insider. To the extent it was not for reasonably equivalent value, it was a fraudulent transfer.

### *Executive Compensation and Disgorgement of Fees*

229.    Defendants  Cape Capital, Harold Dixon, Frank Hennessey, Thomas Moran, James Moses, Goodwin Procter, and John LeClaire, all received executive compensation or fees that they were not entitled to.

230.    Specifically, on January 25, 2013, Debtor wired $175,000 to Goodwin Procter. On August 30, 2013, Blast Acquisition wired $375,000 to Goodwin Procter. Goodwin Procter and John LeClaire did not provide valuable assistance or legal services as required under Goodwin Procter's fee agreement, Massachusetts ethical rules for practicing attorneys, and other law.

231.    Goodwin Procter and John LeClaire, failed to represent the interests of the
Debtor. Instead, Goodwin Procter assisted and advised their other client, Harold Dixon
in his efforts to take real estate that the Debtor was entitled to. These payments to
Goodwin Procter LLP were not earned and should be disgorged as fraudulent transfers.

232.    On information and belief, after he filed for personal bankruptcy,
Defendant James Moses received regular monthly payments of $12,000, directly or
indirectly, from the Debtor in the form of "consulting fees", while James Moses did not
provide reasonably equivalent consideration in exchange for such regular payments.
These payments to James Moses were not earned and should be disgorged as
fraudulent transfers.

233.    Throughout the time that they worked for the Debtor and the Debtor's
subsidiaries, Defendants  Cape Capital, Harold Dixon, Frank Hennessey, Thomas
Moran received valuable compensation directly or indirectly from the Debtor or the
Debtor's subsidiaries. These payments to Defendants  Cape Capital, Harold Dixon,
Frank Hennessey, Thomas Moran were not earned and should be disgorged as
fraudulent transfers.

### Additional Allegations

234.    Debtor's corporate offices, as well as those of many of the related entities,
are variously listed as either 452 Lexington Street or 487 Auburn Street in Newton, MA.
These appear to both refer to the same property that all relevant times was owned by
Mykonos LLC, an entity that has overlapping ownership and control with the Debtor.
Frank Hennessey and Cape Capital own Mykonos.

45

235.    The Beninati action was filed on May 24, 2012. Dixon, Cape Capital, and a number of Blast entities including the Debtor were sued. Goodwin represented these defendants.

236.    At the time of bankruptcy, 61% of Debtor was owned by Auburndale Fitness Group, which was owned by Cape Capital and Frank Hennessey, 36% by the Dixon Family L.P, and 3% by Hennessey directly.

237.    Because the Defendants' have been in unique control of the Debtor's financial records up until the bankruptcy filing and even beyond, a precise picture of the Debtor's finances and the crucial financial information necessary to allege all fraudulent transfers is unknown.

238.    Through discovery, the Trustee may discover other transfers or preferences that have been concealed.

## COUNT I

### Fraudulent Transfer - Constructive Fraud, § 548(a)(1)(B)

*against Harold R. Dixon, Juliet J. Dixon, Thomas Moran, Frank Hennessey, Cape Capital, LLC, Dixon Family Limited Partnership, Michael J. Craffey, individually and as Trustee, Thomas F. Walsh, Harold R. Dixon IV GST Trust, George L. Dixon GST Trust, William A. Dixon GST Trust, John E. Dixon GST Trust, 63 Cart Path Road Nominee Trust, 31 Green Lane Nominee Trust, James Moses, LexFit, LLC, NewFit, LLC, Blast Fitness Personal Training, LLC, NewFit MGMT, LLC, Auburndale Fitness Group Investments, LLC, Capecapital Maryland Heights, LLC, No. 10, LLC, Capecapital West Hartford, LLC, WH-ELM, LLC, Capecapital Irving, LLC, Klopro-belt, LLC, Capecapital Jewel, LLC, Stonegate Group, LLC, Goodwin Procter, LLP, John LeClair, Blast Fitness Schaumburg, LLC, Blast Fitness Lawrence, LLC, Blast Fitness Mashpee, LLC, Blast Fitness Plymouth, LLC, Blast Fitness Saugus, LLC, Blast Fitness Acquisition, LLC, Blast Fitness Worcester, LLC, Blast Fitness Tewksbury, LLC, Blast Fitness Group Niles LLC, Blast Fitness Cambridge LLC, Blast Fitness Jefferson LLC, Blast Fitness Glendale Heights, LLC, Blast Fitness Humble, LLC, Blast Fitness Parliament, LLC, Blast Fitness Naperville, LLC, Townln Plaza Medford, Blast Fitness WR, LLC and John Does 1-62 ("Count 1 Defendants")*

239.    The Trustee reasserts and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

240.    The Debtor transferred Property to the Count 1 Defendants, in a series of transactions as alleged above.

241.    At the time of the transfers, the Debtor received less than a reasonably equivalent value in exchange for the transfers of the Debtor's property.

242.    The Debtor was insolvent, as defined by 11 U.S.C. § 101(31), at the time of the transfers or was rendered insolvent by the transfers shortly thereafter.

243.    The transfers may be avoided by the Trustee pursuant to 11 U.S.C. § 548(a)(1)(B).

244.    Pursuant to 11 U.S.C. § 550(a) the Trustee may recover damages from the Count 2 Defendants in an amount to be determined at trial.

## COUNT II

### Fraudulent Transfer - Actual Intent to Delay or Hinder Creditors, § 548(a)(1)(A)

*against Harold R. Dixon, Juliet J. Dixon, Frank Hennessey, Cape Capital, LLC, Dixon Family Limited Partnership, Michael J. Craffey, individually and as Trustee, Thomas F. Walsh, Harold R. Dixon IV GST Trust, George L. Dixon GST Trust, William A. Dixon GST Trust, John E. Dixon GST Trust, 63 Cart Path Road Nominee Trust, 31 Green Lane Nominee Trust, James Moses, LexFit, LLC, NewFit, LLC, Blast Fitness Personal Training, LLC, NewFit MGMT, LLC, Auburndale Fitness Group Investments, LLC, Capecapital Maryland Heights, LLC, No. 10, LLC, Capecapital West Hartford, LLC, WH-ELM, LLC, Capecapital Irving, LLC, Klopro-belt, LLC, Capecapital Jewel, LLC, Stonegate Group, LLC, Blast Fitness Schaumburg, LLC, Blast Fitness Lawrence, LLC, Blast Fitness Mashpee, LLC, Blast Fitness Plymouth, LLC, Blast Fitness Saugus, LLC, Blast Fitness Acquisition, LLC, Blast Fitness Worcester, LLC, Blast Fitness Tewksbury, LLC, Blast Fitness Group Niles LLC, Blast Fitness Cambridge LLC, Blast Fitness Jefferson LLC, Blast Fitness Glendale Heights, LLC, Blast Fitness Humble, LLC, Blast Fitness Parliament, LLC, Blast Fitness Naperville, LLC, Townline Plaza Medford, Blast Fitness WR, LLC, and John Does 1-62 ("Count 2 Defendants")*

245.    The Trustee reasserts and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

246.    The Count 2 Defendants transferred or caused to be transferred the assets of the Debtor to themselves or other Count 2 Defendants.

247.    The transfers were performed with the actual intent to defraud, hinder or delay the creditors, past and future, of the Debtor.

248.    The transfer may be avoided by the Trustee pursuant to 11 U.S.C. § 548(a)(1)(A).

249.    Pursuant to 11 U.S.C. § 550(a) the Trustee may recover damages from the Count 2 Defendants in an amount to be determined at trial.

## COUNT III

### Fraudulent Transfer - Constructive, M.F.T.A. § 5(a)(2)

*against Harold R. Dixon, Juliet J. Dixon, Thomas Moran, Frank Hennessey, Cape Capital, LLC, Dixon Family Limited Partnership, Michael J. Craffey, individually and as Trustee, Thomas F.*

48

*Walsh, Harold R. Dixon IV GST Trust, George L. Dixon GST Trust, William A. Dixon GST
Trust, John E. Dixon GST Trust, 63 Cart Path Road Nominee Trust, 31 Green Lane Nominee
Trust, James Moses, LexFit, LLC, NewFit, LLC, Blast Fitness Personal Training, LLC, NewFit
MGMT, LLC, Auburndale Fitness Group Investments, LLC, Capecapital Maryland Heights,
LLC, No. 10, LLC, Capecapital West Hartford, LLC, WH-ELM, LLC, Capecapital Irving, LLC,
Klopro-belt, LLC, Capecapital Jewel, LLC, Stonegate Group, LLC, Goodwin Procter, LLP, John
LeClair, Blast Fitness Schaumburg, LLC, Blast Fitness Lawrence, LLC, Blast Fitness Mashpee,
LLC, Blast Fitness Plymouth, LLC, Blast Fitness Saugus, LLC, Blast Fitness Acquisition, LLC,
Blast Fitness Worcester, LLC, Blast Fitness Tewksbury, LLC, Blast Fitness Group Niles LLC,
Blast Fitness Cambridge LLC, Blast Fitness Jefferson LLC, Blast Fitness Glendale Heights, LLC,
Blast Fitness Humble, LLC, Blast Fitness Parliament, LLC, Blast Fitness Naperville, LLC,
Townline Plaza Medford, Blast Fitness WR, LLC, and John Does 1-62 ("Count 3 Defendants")*

250.     The Trustee reasserts and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

251.     The Debtor transferred Property to the Count 3 Defendants, in a series of transactions as alleged above.

252.     The Debtor made the transfers without receiving a reasonably equivalent value in exchange for the transfers.

253.     At the time of the transfers, the Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction.

254.     At the time of the transfers, the Debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

255.     The Debtor was insolvent, as defined by M.G.L. ch. 109A, § 3, at the time of the transfers or was rendered insolvent by the transfers.

256.     Pursuant to M.G.L. ch. 109A, § 5(a), the transfers constituted fraudulent transfers.

49

257.    A fraudulent transfer may be set aside by any past or future creditor of the

Debtor pursuant to M.G.L. ch. 109A, § 8(a)(1).

258.    Pursuant to 11 U.S.C. § 544(b), the Trustee may avoid any transfer of an

interest of the Debtor in property voidable by a holder of an allowable unsecured claim.

259.    The schedules filed by the Debtor in his chapter 7 case list numerous

creditors with allowable, unsecured claims.

260.    The above alleged transfers constituted fraudulent transfers pursuant to

M.G.L. ch. 109A which may be set aside by the Trustee.

261.    Pursuant to 11 U.S.C. § 550(a) the Trustee may recover damages from the

Count 3 Defendants in an amount to be determined at trial.

## COUNT IV

### Fraudulent Transfer - Constructive, M.F.T.A. § 6(a)

*against Harold R. Dixon, Juliet J. Dixon, Thomas Moran, Frank Hennessey, Cape Capital, LLC, Dixon Family Limited Partnership, Michael J. Craffey, individually and as Trustee, Thomas F. Walsh, Harold R. Dixon IV GST Trust, George L. Dixon GST Trust, William A. Dixon GST Trust, John E. Dixon GST Trust, 63 Cart Path Road Nominee Trust, 31 Green Lane Nominee Trust, James Moses, LexFit, LLC, NewFit, LLC, Blast Fitness Personal Training, LLC, NewFit MGMT, LLC, Auburndale Fitness Group Investments, LLC, Capecapital Maryland Heights, LLC, No. 10, LLC, Capecapital West Hartford, LLC, WH-ELM, LLC, Capecapital Irving, LLC, Klopro-belt, LLC, Capecapital Jewel, LLC, Stonegate Group, LLC, Goodwin Procter, LLP, John LeClair, Blast Fitness Schaumburg, LLC, Blast Fitness Lawrence, LLC, Blast Fitness Mashpee, LLC, Blast Fitness Plymouth, LLC, Blast Fitness Saugus, LLC, Blast Fitness Acquisition, LLC, Blast Fitness Worcester, LLC, Blast Fitness Tewksbury, LLC, Blast Fitness Group Niles LLC, Blast Fitness Cambridge LLC, Blast Fitness Jefferson LLC, Blast Fitness Glendale Heights, LLC, Blast Fitness Humble, LLC, Blast Fitness Parliament, LLC, Blast Fitness Naperville, LLC, Townline Plaza Medford, Blast Fitness WR, LLC, Blast Fitness Schaumburg, LLC, Blast Fitness Lawrence, LLC, Blast Fitness Mashpee, LLC, Blast Fitness Plymouth, LLC, Blast Fitness Saugus, LLC, Blast Fitness Acquisition, LLC, Blast Fitness Worcester, LLC, Blast Fitness Tewksbury, LLC, Blast Fitness Group Niles LLC, Blast Fitness Cambridge LLC, Blast Fitness Jefferson LLC, Blast Fitness Glendale Heights, LLC, Blast Fitness Humble, LLC, Blast Fitness Parliament, LLC, Blast Fitness Naperville, LLC, Townline Plaza Medford, Blast Fitness WR, LLC, and John Does 1-62 ("Count 4 Defendants")*

262.    The Trustee reasserts and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

263.    The Debtor transferred property to the Count 4 Defendants in a series of transactions as alleged above.

264.    The Debtor made the transfers without receiving a reasonably equivalent value in exchange for the transfers.

265.    The Debtor was insolvent, as defined by M.G.L. ch. 109A, § 3, at the time of the transfers or was rendered insolvent by the transfers.

266.    Pursuant to M.G.L. ch. 109A, § 6(a), the transfers constituted fraudulent transfers.

51

267.    A fraudulent transfer may be set aside by any past creditor of the Debtor pursuant to M.G.L. ch. 109A, § 8(a)(1).

268.    Pursuant to 11 U.S.C. § 544(b), the Trustee may avoid any transfer of an interest of the Debtor in property voidable by a holder of an allowable unsecured claim.

269.    The schedules filed by the Debtor in his chapter 7 case list numerous creditors with allowable, unsecured claims. On information and belief, at least one of such creditors had a claim against the Debtor at the time of the transfers described above.

270.    The transfers constituted fraudulent transfers pursuant to M.G.L. ch. 109A which may be set aside by the Trustee.

271.    Pursuant to 11 U.S.C. § 550(a) the Trustee may damages from the Count 4 Defendants in an amount to be determined at trial.

## COUNT V

### Fraudulent Transfer – Actual, M.F.T.A. § 5(a)(1)

*against Harold R. Dixon, Juliet J. Dixon, Frank Hennessey, Cape Capital, LLC, Dixon Family Limited Partnership, Michael J. Craffey, individually and as Trustee, Thomas F. Walsh, Harold R. Dixon IV GST Trust, George L. Dixon GST Trust, William A. Dixon GST Trust, John E. Dixon GST Trust, 63 Cart Path Road Nominee Trust, 31 Green Lane Nominee Trust, James Moses, LexFit, LLC, NewFit, LLC, Blast Fitness Personal Training, LLC, NewFit MGMT, LLC, Auburndale Fitness Group Investments, LLC, Capecapital Maryland Heights, LLC, No. 10, LLC, Capecapital West Hartford, LLC, WH-ELM, LLC, Capecapital Irving, LLC, Klopro-belt, LLC, Capecapital Jewel, LLC, Stonegate Group, LLC, Blast Fitness Schaumburg, LLC, Blast Fitness Lawrence, LLC, Blast Fitness Mashpee, LLC, Blast Fitness Plymouth, LLC, Blast Fitness Saugus, LLC, Blast Fitness Acquisition, LLC, Blast Fitness Worcester, LLC, Blast Fitness Tewksbury, LLC, Blast Fitness Group Niles LLC, Blast Fitness Cambridge LLC, Blast Fitness Jefferson LLC, Blast Fitness Glendale Heights, LLC, Blast Fitness Humble, LLC, Blast Fitness Parliament, LLC, Blast Fitness Naperville, LLC, Townline Plaza Medford, Blast Fitness WR, LLC, and John Does 1-62 ("Count 5 Defendants")*

272.    The Trustee reasserts and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

273.    The Count 5 Defendants transferred or caused to be transferred the assets of the Debtor to themselves or other Count 5 Defendants.

274.    The transfers were made with actual intent to hinder, delay, or defraud a creditor of the Debtor.

275.    Pursuant to M.G.L. ch. 109A, § 5(a)(1), the transfers constituted fraudulent transfers.

276.    Pursuant to M.G.L. ch. 109A, § 5(a), the transfers constituted fraudulent transfers.

277.    A fraudulent transfer may be set aside by any past or future creditor of the Debtor pursuant to M.G.L. ch. 109A, § 8(a)(1).

278.    Pursuant to 11 U.S.C. § 544(b), the Trustee may avoid any transfer of an interest of the Debtor in property voidable by a holder of an allowable unsecured claim.

279.    The schedules filed by the Debtor in its Chapter 7 case list numerous creditors with allowable, unsecured claims.

280.    The transfers constituted fraudulent transfers pursuant to M.G.L. ch. 109A which may be set aside by the Trustee.

281.    Pursuant to 11 U.S.C. § 550(a) the Trustee may recover damages from the Count 6 Defendants in an amount to be determined at trial.

## COUNT VI

**For Turnover of Property of the Estate pursuant to 11 U.S.C. § 542(b)**
*against Harold R. Dixon, LexFit, LLC, and NewFit, LLC (the "Count 6 Defendants")*

282.    The Trustee reasserts and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

283.    The Count 6 Defendants each owe a debt that is property of the estate and that is matured, payable on demand, or payable on order.

284.    Pursuant to Sections 542(b) of the Bankruptcy Code, the Trustee is entitled to an order requiring that the Count 6 Defendants turnover the property of the Estate to the Debtor's Estate.

## COUNT VII

**For Turnover of Property of the Estate pursuant to 11 U.S.C. § 550**
*against the Count 1 Defendants, the Count 2 Defendants, No. 10, LLC, WH-ELM, LLC, and Klopro-belt, LLC (all together, the "Count 7 Defendants")*

285.    The Trustee reasserts and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

286.    To the extent that a transfer described above is avoided, the Trustee is entitled recovery the property transferred in the voided transfer or the value of such property.

287.    The Count 7 Defendants are either initial transferees, the entity for whose benefit such transfers were made, or an immediate or mediate transferee of the initial transferees.

288.    Pursuant to 11 U.S.C. § 550(a) the Trustee may recover damages from the Count 7 Defendants in an amount to be determined at trial.

## COUNT VIII

**For Unjust Enrichment**
*against all Defendants*

289.    The Trustee reasserts and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

290.    By transferring all or almost all of the valuable assets to the Defendants, as described above, the Debtor conferred benefits upon the Defendants.

291.    The Defendants knew they had received an extraordinary benefit from the Debtor.

55

292.     The Defendants now retain the benefit of the Debtor's assets, to the detriment of the Trustee, the Estate, and the Creditors.

293.     Allowing the Defendants to retain the extraordinary benefit of the Debtor's assets, given the circumstances described above, would be inequitable and unjust without payment for their value.

294.     In order to prevent unjust enrichment, the Trustee is entitled to a declaration that the above described property is the property of the Estate. The Trustee is also entitled to an order requiring Defendants to pay damages in an amount to be determined at trial, along with interest, attorneys' fees, and costs to the Trustee.

## COUNT IX

**For Preference pursuant to M.F.T.A. § 6(b) and 11 U.S.C. § 547(a)**
*against NewFit, LLC*

295.     The Trustee reasserts and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

296.     On May 1, 2015, the Debtor transferred the membership list of Blast Schaumburg, LLC to NewFit, LLC, in exchange for forgiveness of $595,466.62 in antecedent debt.

297.     The transfer, was to or for the benefit of NewFit, LLC, who was a creditor of the debtor.

298.     The transfer of funds was for or on account of an antecedent debt owed by the Debtor before the transfer was made.

299.     The Debtor was insolvent at the time of the transfer.

300.    NewFit, LLC had reasonable cause to believe that the Debtor was insolvent because Cape Capital was the manager of the Debtor and NewFit, LLC.

301.    The transfer occurred on or within one year before the date the Debtor filed the bankruptcy petition.

302.    Pursuant to M.G.L. ch. 109A, § 6(b), the transfer constituted a fraudulent transfer.

303.    A fraudulent transfer may be set aside by any past creditor of the debtor pursuant to M.G.L. ch. 109A, § 8(a)(1).

304.    Pursuant to 11 U.S.C. § 544(b), the trustee may avoid any transfer of an interest of the debtor in property voidable by a holder of an allowable unsecured claim.

305.    The schedules filed by the Debtor in his chapter 7 case list numerous creditors with allowable, unsecured claims. On information and belief, at least one of such creditors had a claim against the Debtor at the time of the transfer.

306.    The transfer constituted a fraudulent transfer pursuant to M.G.L. ch. 109A which may be set aside by the Trustee.

307.    The transfer enabled the NewFit, LLC to receive more than NewFit, LLC would have received if: (a) the case were a case under Chapter 7 of the United States Bankruptcy Code; (b) the transfer had not been made; and (c) NewFit, LLC received payment of such debt to the extent provided by the provisions of Title 11.

308.    The transfer may be avoided by the Trustee pursuant to 11 U.S.C. § 547(a).

309.    Pursuant to 11 U.S.C. § 550(a) the Trustee may recover damages from NewFit, LLC in an amount to be determined at trial.

57

## COUNT X

### For statutory action to reach and apply pursuant to 11 U.S.C.
### §§ 544 and 550 and Mass. G.L. c. 214, § 3(8)

*against Harold R. Dixon, Juliet J. Dixon, Frank Hennessey, Cape Capital, LLC, Dixon Family Limited Partnership, Thomas F. Walsh, Harold R. Dixon IV GST Trust, George L. Dixon GST Trust, William A. Dixon GST Trust, John E. Dixon GST Trust, 63 Cart Path Road Nominee Trust, 31 Green Lane Nominee Trust, LexFit, LLC, NewFit, LLC, Blast Fitness Personal Training, LLC, NewFit MGMT, LLC, Auburndale Fitness Group Investments, LLC, Capecapital Maryland Heights, LLC, Capecapital West Hartford, LLC, Capecapital Irving, LLC, Capecapital Jewel, LLC, Blast Fitness Schaumburg, LLC, Blast Fitness Lawrence, LLC, Blast Fitness Mashpee, LLC, Blast Fitness Plymouth, LLC, Blast Fitness Saugus, LLC, Blast Fitness Acquisition, LLC, Blast Fitness Worcester, LLC, Blast Fitness Tewksbury, LLC, Blast Fitness Group Niles LLC, Blast Fitness Cambridge LLC, Blast Fitness Jefferson LLC, Blast Fitness Glendale Heights, LLC, Blast Fitness Humble, LLC, Blast Fitness Parliament, LLC, Blast Fitness Naperville, LLC, Townline Plaza Medford, Blast Fitness WR, LLC, and John Does 1-62 ("Count 10 Defendants")*

310.    The Trustee reasserts and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

311.    The above-described fraudulent transfers were made with actual intent to defeat, delay, or defraud the creditors of the Debtor.

312.    Pursuant to Mass. Gen. Laws Ch. 214, § 3(8), the Trustee is entitled to reach the assets formerly held by the Debtor that are now owned, controlled, or in the possession of the Count 10 Defendants and apply the assets to the Estate.

313.    Trustee requests a declaration from the Court granting the Trustee the authority to reach the assets formerly held by the Debtor that are now owned, controlled, or in the possession of the Count 10 Defendants and apply the assets to the Estate.

58

## COUNT XI

### For Establishment of Resulting Trust/Constructive Trust

*against Frank Hennessey, Cape Capital, LLC, Dixon Family Limited Partnership, Thomas F. Walsh, Harold R. Dixon IV GST Trust, George L. Dixon GST Trust, William A. Dixon GST Trust, John E. Dixon GST Trust, 63 Cart Path Road Nominee Trust, 31 Green Lane Nominee Trust, LexFit, LLC, NewFit, LLC, Blast Fitness Personal Training, LLC, NewFit MGMT, LLC, Auburndale Fitness Group Investments, LLC, Capecapital Maryland Heights, LLC, Capecapital West Hartford, LLC, Capecapital Irving, LLC, Capecapital Jewel, LLC, Blast Fitness Schaumburg, LLC, Blast Fitness Lawrence, LLC, Blast Fitness Mashpee, LLC, Blast Fitness Plymouth, LLC, Blast Fitness Saugus, LLC, Blast Fitness Acquisition, LLC, Blast Fitness Worcester, LLC, Blast Fitness Tewksbury, LLC, Blast Fitness Group Niles LLC, Blast Fitness Cambridge LLC, Blast Fitness Jefferson LLC, Blast Fitness Glendale Heights, LLC, Blast Fitness Humble, LLC, Blast Fitness Parliament, LLC, Blast Fitness Naperville, LLC, Townline Plaza Medford, Blast Fitness WR, LLC, and John Does 1-62 ("Count 11 Defendants")*

314.    The Trustee reasserts and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

315.    The Count 11 Defendants wrongfully and fraudulently transferred the Debtor's property, in an attempt to delay, defeat, and defraud the creditors of the Debtor.

316.    The Count 11 Defendants still wrongfully control, possess and hold the aforementioned proceeds.

317.    By reason of the fraudulent and otherwise wrongful manner in which the Count 11 Defendants have obtained their alleged right, claim or interest in and to the proceeds, this Court can hold that the Count 11 Defendants have no legal or equitable right, claim, or interest therein, and instead, that the Count 11 Defendants are involuntary trustees holding the proceeds and any profits therefrom in resulting trust/constructive trust for the Trustee and the Debtor's Estate.

318.    The Court can also hold that the Count 11 Defendants have a duty to convey such proceeds to the Trustee and the Estate forthwith.

319.    Wherefore, the Trustee requests a declaration from the Court that the Count 11 Defendants hold the proceeds as a resulting trustee/constructive trustee for the benefit of the Trustee and the Debtor's Estate.

## COUNT XII

### For Legal Malpractice/Professional Negligence
*against Goodwin Procter LLP, John LeClair, and Peter Fenn ("Count 12 Defendants")*

320.    The Trustee reasserts and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

321.    The Count 12 Defendants represented the Debtor and owed the Debtor a duty of care.

322.    The Count 12 Defendants inadequately and negligently represented the Debtor's interests and breached the duty owed to the Debtor as a result of those acts and omissions enumerated above.

323.    Specifically, Defendant Goodwin Procter LLP and John LeClair violated a series of ethical rules and duties throughout the representation of the Debtor including, but not limited to knowing of the existence of an unwaivable conflict of interest and deliberately failing to withdraw from the representation.

324.    When time was of the essence, Goodwin Procter LLP and John LeClair violated their ethical duty to produce to the Debtor its complete file from its engagement.

60

325.    The actions of the Count 12 Defendants constitute legal malpractice and

gross negligence.

326.    As a direct and proximate result of the negligence of the Count 12

Defendants, the Debtor has suffered injury, including but not limited to, losses of assets

and property, additional legal fees, interest, costs, and attorneys' fees for having to

litigate the instant action.

## COUNT XIII

**For Breach of Professional Fiduciary Duty**
*against Goodwin Procter, LLP, John LeClair, and Peter Fenn ("Count
13 Defendants")*

327.    The Trustee reasserts and re-alleges each and every allegation contained

in the preceding paragraphs as if fully set forth herein.

328.    By retaining the Count 13 Defendants, the Debtor was owed the duties of

utmost good faith, fair dealing, and loyalty by the Count 13 Defendants.

329.    The Count 13 Defendants intentionally, willfully, and grossly breached

their fiduciary duties, including but not limited to when they knowingly failed to make

known their conflicts of interests, represented adverse and non-identical parties in

transactions, took preferential transfers of funds.

330.    That is, the Count 13 Defendants simultaneously represented the Debtor's

interest and either their own interests of a party whose interests were not aligned with

the Debtor's, and provided the Debtor with conflicted legal advice and services.

331.    As a result of the Count 13 Defendants' various breaches of their fiduciary

duties owed to the Debtor, the Debtor has suffered injury, including but not limited to,

61

losses of assets and property, additional legal fees, interest, costs, and attorneys' fees for having to litigate the instant action.

## COUNT XIV

**For violation of M.G.L. c. 93A, §§ 2, 11**
*against Goodwin Procter, LLP and John LeClair ("Count 14 Defendants")*

332.     The Trustee reasserts and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

333.     The Count 14 Defendants were engaged in trade or commerce in the Commonwealth of Massachusetts and were therefore restricted from engaging in unfair or deceptive trade practices in violation of M.G.L. c. 93A, §§ 2 and 11.

334.     The Defendants held themselves out to the Debtor as having a specialization and expertise in the area of mergers, acquisitions, and the representation of entities.

335.     The Count 14 Defendants violated M.G.L. c. 93A, §§ 2 and 11 when they violated a series of ethical rules and duties, including but not limited to knowing of the existence of an unwaivable conflict of interest and deliberately failing to withdraw from their representation; failing to produce to the Debtor its complete file from its engagement when requested.

336.     As a result of the violations of M.G.L. c. 93A, §§ 2 and 11, the Debtor has sustained injuries for which it is entitled to compensatory relief, disgorgement of the fees paid, multiple damages, attorneys' fees, interest, and costs.

## COUNT XV

### For Breach of Fiduciary Duty

*against Thomas Moran, Frank Hennessey, Cape Capital, LLC, Peter Fenn, and Auburndale
Fitness Group Investments, LLC ("Count 15 Defendants")*

337.    The Trustee reasserts and re-alleges each and every allegation contained
in the preceding paragraphs as if fully set forth herein.

338.    The Count 15 Defendants were officers, managers, or members of the
Debtor.

339.    The Count 15 Defendants owed all other members of the Debtor the
fiduciary duty of care, loyalty, and good faith.

340.    The Count 15 Defendants each breached this fiduciary duty by, among
other things, secretly selling off the Debtor's assets to other entities, taking corporate
opportunities from the Debtor, self-dealing or dealing with a closely related third-party
entity, or engineering fictitious books to inflate or deflate club values when it would
suit them.

341.    As a result of the Count 15 Defendants' breaches of their fiduciary duties,
the Debtor has been damaged by, among other things, losing assets in undervalued
transfers, losing corporate opportunities, overpaying for services provided by entities
related to Count 15 Defendants, and by waste of company resources.

342.    As a result of the Count 15 Defendants' breaches, each of the members
and the creditors of the Debtor have been damaged in that, among other things, the
Debtor's resources were wasted and the assets of the company and each member's
interest were diminished.

## COUNT XVI

### For Conspiracy

*against Harold R. Dixon, Thomas Moran, Frank Hennessey, Cape Capital, LLC, Dixon Family Limited Partnership, Peter Fenn, LexFit, LLC, NewFit, LLC, Blast Fitness Personal Training, LLC, NewFit MGMT, LLC, Auburndale Fitness Group Investments, LLC, Capecapital Maryland Heights, LLC, Capecapital West Hartford, LLC, Capecapital Irving, LLC, Blast Fitness Schaumburg, LLC, Blast Fitness Lawrence, LLC, Blast Fitness Mashpee, LLC, Blast Fitness Plymouth, LLC, Blast Fitness Saugus, LLC, Blast Fitness Acquisition, LLC, Blast Fitness Worcester, LLC, Blast Fitness Tewksbury, LLC, Blast Fitness Group Niles LLC, Blast Fitness Cambridge LLC, Blast Fitness Jefferson LLC, Blast Fitness Glendale Heights, LLC, Blast Fitness Humble, LLC, Blast Fitness Parliament, LLC, Blast Fitness Naperville, LLC, Townline Plaza Medford, Blast Fitness WR, LLC, Capecapital Jewel, LLC, and John Does 1-20 ("Count 16 Defendants")*

343.    The Trustee reasserts and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

344.    The Count 16 Defendants formed a confederation for the purpose of siphoning assets away from the Debtor, and leaving the Debtor undercapitalized to repay its liabilities.

345.    The Count 16 Defendants formed a confederation for the purpose of defrauding the members and creditors of the Debtor.

346.    The Count 16 Defendants formed a confederation for the purpose of converting and stealing the debtor's funds and assets.

347.    The conspiracy began no later than 2012, and it continued at least until the Debtor's filing for Bankruptcy in this Court.

348.    Upon information and belief, the Count 16 Defendants were and are conscious members of this conspiracy.

349.    In furtherance of the conspiracy's purpose, the Count 15 Defendants committed acts that violated their fiduciary duties to the Debtor.

350.    In furtherance of the conspiracy's purpose, the Count 16 Defendants transferred assets away from the Debtor, took corporate opportunities belonging to the Debtor, held assets of the Debtor, and overcharged the Debtor for leases and licenses.

351.    In furtherance of the conspiracy's purpose, the Count 16 Defendants manipulated corporate books in closed door meetings at the Newton office to confuse or hinder the unwary members and creditors of the Debtor.

352.    In furtherance of the conspiracy's purpose, the Count 16 Defendants used the manipulated numbers to transfer the valuable fitness clubs—which they had caused to appear to be less valuable—to themselves and the assets of other clubs to themselves.

353.    As a result of the Count 16 Defendants' conspiracy, the Debtor has been damaged by, among other things, losing assets in undervalued transfers, losing corporate opportunities, overpaying for services provided by Count 16 Defendants' related entities, and by waste of company resources.

354.    As a result of the Count 16 Defendants' conspiracy, each of the members and the creditors of the Debtor have been damaged in that, among other things, the Debtor's resources were wasted and the assets of the company and each member's interest were diminished.

## COUNT XVII

### For Aiding and Abetting

*against Harold R. Dixon, Thomas Moran, Frank Hennessey, Cape Capital, LLC, Dixon Family Limited Partnership, Peter Fenn, LexFit, LLC, NewFit, LLC, Auburndale Fitness Group Investments, LLC, Capecapital Maryland Heights, LLC, Capecapital West Hartford, LLC, Capecapital Irving, LLC, Capecapital Jewel, LLC, Blast Fitness Schaumburg, LLC, Blast Fitness Lawrence, LLC, Blast Fitness Mashpee, LLC, Blast Fitness Plymouth, LLC, Blast Fitness Saugus, LLC, Blast Fitness Acquisition, LLC, Blast Fitness Worcester, LLC, Blast Fitness*

*Tewksbury, LLC, Blast Fitness Group Niles LLC, Blast Fitness Cambridge LLC, Blast Fitness Jefferson LLC, Blast Fitness Glendale Heights, LLC, Blast Fitness Humble, LLC, Blast Fitness Parliament, LLC, Blast Fitness Naperville, LLC, Townline Plaza Medford, Blast Fitness WR, LLC, Stonegate Group LLC, and John Does 1-20 ("Count 17 Defendants")*

355.    The Trustee reasserts and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

356.    The Count 15 Defendants were officers, managers, or members of the Debtor.

357.    The Count 15 Defendants owed all other members of the Debtor the fiduciary duty of care, loyalty, and good faith.

358.    The Count 15 Defendants breached their fiduciary duties as alleged above.

359.    The Count 17 Defendants knowingly participated in the Count 15 Defendants' breaches.

360.    The Count 17 Defendants knowingly participated in the Count 18 Defendants' conversion of Debtor's funds and assets.

361.    The Count 17 Defendants knowingly participated in the Count 19 Defendants' defrauding the Members and creditors of the Debtor.

362.    As a result of the Count 17 Defendants' aiding and abetting, the Debtor has been damaged by, among other things, losing assets in undervalued transfers, losing corporate opportunities, overpaying for services provided by Count 17 Defendants' related entities, and by waste of company resources.

363.    As a result of the Count 17 Defendants' aiding and abetting, each of the members and the creditors of the Debtor have been damaged in that, among other

things, the Debtor's resources were wasted and the assets of the company and each

member's interest were diminished.

## COUNT XVIII

### For Conversion and Civil Theft

*against Harold R. Dixon, Thomas Moran, Frank Hennessey, Cape Capital, LLC, Dixon Family
Limited Partnership, Auburndale Fitness Group Investments, LLC, Capecapital Maryland
Heights, LLC, Capecapital West Hartford, LLC, Capecapital Irving, LLC, Blast Fitness
Schaumburg, LLC, Blast Fitness Lawrence, LLC, Blast Fitness Mashpee, LLC, Blast Fitness
Plymouth, LLC, Blast Fitness Saugus, LLC, Blast Fitness Acquisition, LLC, Blast Fitness
Worcester, LLC, Blast Fitness Tewksbury, LLC, Blast Fitness Group Niles LLC, Blast Fitness
Cambridge LLC, Blast Fitness Jefferson LLC, Blast Fitness Glendale Heights, LLC, Blast Fitness
Humble, LLC, Blast Fitness Parliament, LLC, Blast Fitness Naperville, LLC, Townline Plaza
Medford, Blast Fitness WR, LLC, Capecapital Jewel, LLC, and John Does 1-20 ("Count 18
Defendants")*

364.    The Trustee reasserts and re-alleges each and every allegation contained

in the preceding paragraphs as if fully set forth herein.

365.    At relevant times, the Debtor and its members made funds available to the

Count 18 Defendants for, among other things the purpose funding corporate

opportunities, purchasing clubs and real property, and payments of debts.

366.    At relevant times, the Debtor owned certain rights to assets in

transactions, such as the right to receive payments, the right to purchase certain real

estate, and the right to certain personal property, which the Debtor made available to

the Count 18 Defendants to properly manage.

367.    The Count 18 Defendants converted the funds and assets for their own use

and benefit.

368.    When the Count 18 Defendants converted the funds and assets for their

own personal use and benefit, they wrongfully exercised rights of ownership, control,

or dominion over the Debtor's funds and assets to which they had no right of

ownership.

369.    As a result the of the Count 18 Defendants' conversion, the Debtor and its

creditors were damaged. The Trustee is entitled to an order requiring Defendants to pay

damages in an amount to be determined at trial, along with interest, attorneys' fees, and

costs to the Trustee.

## COUNT XIX

### For Fraud

*against Harold R. Dixon, Thomas Moran, Frank Hennessey, Cape Capital, LLC, Dixon Family Limited Partnership, Peter Fenn, LexFit, LLC, NewFit, LLC, Blast Fitness Personal Training, LLC, NewFit MGMT, LLC, Auburndale Fitness Group Investments, LLC, Capecapital Maryland Heights, LLC, Capecapital West Hartford, LLC, Capecapital Irving, LLC, Blast Fitness Schaumburg, LLC, Blast Fitness Lawrence, LLC, Blast Fitness Mashpee, LLC, Blast Fitness Plymouth, LLC, Blast Fitness Saugus, LLC, Blast Fitness Acquisition, LLC, Blast Fitness Worcester, LLC, Blast Fitness Tewksbury, LLC, Blast Fitness Group Niles LLC, Blast Fitness Cambridge LLC, Blast Fitness Jefferson LLC, Blast Fitness Glendale Heights, LLC, Blast Fitness Humble, LLC, Blast Fitness Parliament, LLC, Blast Fitness Naperville, LLC, Townline Plaza Medford, Blast Fitness WR, LLC, Capecapital Jewel, LLC, and John Does 1-20 ("Count 19 Defendants")*

370.    The Trustee reasserts and re-alleges each and every allegation contained

in the preceding paragraphs as if fully set forth herein.

371.    As alleged above, the Count 19 Defendants made a series of

misrepresentations intended to mislead the Debtor's members and creditors into

believing, among other things, that the Debtor was sufficiently capitalized, that the

Debtor was taking advantage of opportunities for which it was not, that the Debtor's

ownership interests were be respected and protected, and that the Debtor's assets were

not as valuable (in some cases) and more valuable (in others) than they actually were.

372.     As alleged above, the Count 19 Defendants' misrepresentations were knowingly false and misleading and made for the purpose of inducing the Debtor and its members to, among other things, signed agreements benefiting the Count 19 Defendants, make inflated payments to the Count 19 Defendants, transfer valuable assets to the Count 19 Defendants, accept the transfer of less-valuable assets, extend credit to the Debtor, capitalize the Debtor, and permit the Count 19 Defendants to take corporate opportunities and other assets of the Debtor.

373.     The Count 19 Defendants knew that the Debtor and its members and creditors would rely on the misrepresentations.

374.     As alleged above, the Count 19 Defendants concealed their fraud by, among other things, manipulating the books and records of the Debtor behind closed doors to misrepresent the values of various fitness clubs and other assets, so that the Count 19 Defendants could take advantage of such misrepresentations.

375.     As a result of the Count 19 Defendants' fraudulent actions, the Debtor and its creditors were damaged. The Trustee is entitled to an order requiring Defendants to pay damages in an amount to be determined at trial, along with interest, attorneys' fees, and costs to the Trustee.

## COUNT XX

### For Intentional Interference with Contractual Advantage
*against Harold R. Dixon, Cape Capital, LLC, LexFit, LLC, NewFit, LLC, Auburndale Fitness Group Investments, LLC, Capecapital Maryland Heights, LLC, Capecapital West Hartford, LLC, Capecapital Irving, LLC, and Capecapital Jewel, LLC ("Count 20 Defendants")*

376.     The Trustee reasserts and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

377.     As alleged above, the Count 20 Defendants knew of contractual advantage held by the Debtor, including the advantages contained in the Bally's asset purchase agreement.

378.     Willfully and knowingly, and having illicit motives and utilizing improper means, the Count 20 Defendants interfered with the contractual advantages held by the Debtor by, among other things, directing Bally's to transfer the real estate and other assets to entities not owned by the Debtor.

379.     As a direct and proximate result of the Count 20 Defendants' interference, the Debtor and its creditors were damaged. The Trustee is entitled to an order requiring Defendants to pay damages in an amount to be determined at trial, along with interest, attorneys' fees, and costs to the Trustee.

## COUNT XXI

### For Tortious Interference with Contractual Advantage
*against Harold R. Dixon, Cape Capital, LLC, LexFit, LLC, NewFit, LLC, Auburndale Fitness Group Investments, LLC, Capecapital Maryland Heights, LLC, Capecapital West Hartford, LLC, Capecapital Irving, LLC, and Capecapital Jewel, LLC ("Count 20 Defendants")*

380.     The Trustee reasserts and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

381.    The Count 22 Defendants knew of the Bally's asset purchase agreement between the Debtor and Bally's Total Fitness.

382.    The Count 22 Defendants knowingly induced Bally's Total Fitness to breach the agreement by inducing Bally's Total Fitness to transfer the real estate and other assets to entities that were not wholly owned by the Debtor as required by the agreement.

383.    The Count 22 Defendants' interference was improper in motive and means, in that it was intended to divert valuable assets away through fraudulent representations to Bally's Total Fitness and the Debtor in order to benefit the Count 22 Defendants at the expense of the Debtor.

384.    As a direct and proximate result of the Count 22 Defendants' actions, the Debtor and its creditors were damaged. The Trustee is entitled to an order requiring Defendants to pay damages in an amount to be determined at trial, along with interest, attorneys' fees, and costs to the Trustee.

## COUNT XXII

**For breach of contract pursuant to 11 U.S.C. §§ 544 & 550**
*against James Moses, Goodwin Procter, LLP, John LeClair, Capecapital Maryland Heights, LLC, Capecapital West Hartford LLC and Capecapital Irving, LLC ("Count 22 Defendants")*

385.    The Trustee reasserts and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

386.    Goodwin Procter, LLP, John LeClair, and the Debtor entered into a contract when the Debtor engaged Goodwin Procter, LLP and John LeClair to represent it.

71

387.     Goodwin Procter, LLP and John LeClair breached the engagement

agreement with the Debtor by failing to provide adequate legal services in their

representative of the Debtor.

388.     The Debtor and James Moses entered into an agreement whereby Moses

would provide the Debtor with certain services in exchanged for a $15,000 per month

consultation fee.

389.     Moses breached this contract by failing to provide the services he agreed

to provide.

390.     Capecapital Maryland Heights, LLC, Capecapital West Hartford LLC and

Capecapital Irving, LLC entered into leases with the Debtor, Blast Acquisition, or a

wholly owned subsidiary of the Debtor, for the lease of certain commercial real estate.

391.     Capecapital Maryland Heights, LLC, Capecapital West Hartford LLC and

Capecapital Irving, LLC breached these leases when they terminated these leases

prematurely so that apecapital Maryland Heights, LLC, Capecapital West Hartford LLC

and Capecapital Irving, LLC could sell the commercial real estate to benefit Capecapital

Maryland Heights, LLC, Capecapital West Hartford LLC and Capecapital Irving, LLC

and its member Harold Dixon.

392.     The Count 22 Defendants breached their contracts with the Debtor by

breaching the implied duty of good faith and fair dealing inherent in all contracts.

393.     As a direct result of the Count 22 Defendants' breaches of their

agreements with the Debtor, the Trustee and the Debtor's Estate have suffered

damages, including but not limited to, the resulting insolvency of the Estate, costs and

attorneys' fees from bringing this action, and for other damages to be determined at trial.

## COUNT XXIII

### For Substantive Consolidation

*against Harold R. Dixon, Cape Capital, LLC, Dixon Family Limited Partnership, Harold R. Dixon IV GST Trust, George L. Dixon GST Trust, William A. Dixon GST Trust, John E. Dixon GST Trust, 63 Cart Path Road Nominee Trust, 31 Green Lane Nominee Trust, LexFit, LLC, NewFit, LLC, Blast Fitness Personal Training, LLC, NewFit MGMT, LLC, Auburndale Fitness Group Investments, LLC, Capecapital Maryland Heights, LLC, Capecapital West Hartford, LLC, Capecapital Irving, LLC, Capecapital Jewel, LLC, Blast Fitness Schaumburg, LLC, Blast Fitness Lawrence, LLC, Blast Fitness Mashpee, LLC, Blast Fitness Plymouth, LLC, Blast Fitness Saugus, LLC, Blast Fitness Acquisition, LLC, Blast Fitness Worcester, LLC, Blast Fitness Tewksbury, LLC, Blast Fitness Group Niles LLC, Blast Fitness Cambridge LLC, Blast Fitness Jefferson LLC, Blast Fitness Glendale Heights, LLC, Blast Fitness Humble, LLC, Blast Fitness Parliament, LLC, Blast Fitness Naperville, LLC, Townline Plaza Medford, Blast Fitness WR, LLC, and John Does 1-20 ("Count 23 Defendants")*

394.    The Trustee reasserts and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

395.    The assets and liabilities of the Debtor and the Count 23 Defendants are all indistinguishable from one another.

396.    The Debtor and the Count 23 Defendants commingled funds and assets throughout their existences.

397.    The Count 23 Defendants are all related through their members, managers, or through related settlors or the beneficiaries of the corresponding trust.

398.    Dixon increased the profitability of the Count 23 Defendants by saddling the Debtor with all or most of the entire enterprise's liabilities.

399.    The assets and the business functions between the Debtor and the Count 23 Defendants however, are commingled.

73

400.    The Debtor transferred substantially all of its valuable assets to the Count 23 Defendants without receiving value for the assets.

401.    Inequity and resultant harm to creditors would result if the Debtor may shed its liabilities while maintaining its assets through the Count 23 Defendants.

402.    No creditor of the Count 23 Defendants would be harmed by substantively consolidating them with the Debtor.

403.    On information and belief, creditors dealt with the Debtor and the Count 23 Defendants as a single economic unit, never relying on their separate identity in extending credit.

404.    To prevent inequity and resultant harm to creditors, the Trustee requests the Court substantive consolidate the assets of the Count 23 Defendants into the Debtor's Estate.

## COUNT XXIV

### For Successor Liability
*against NewFit, LLC and LexFit, LLC ("Count 24 Defendants")*

405.    The Trustee reasserts and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

406.    The Count 24 Defendants continued running fitness clubs, using the "Blast Fitness" name.

407.    The Count 24 Defendants continued with the management, personnel, physical location, assets, and business of the Debtor.

408.    The Count 24 Defendants acquired some of membership lists to continue profiting on the Debtor's operations.

74

409.     In transferring assets of the Debtor to The Count 24 Defendants, the

majority equity interest in the Debtor and The Count 24 Defendants was held by  Cape

Capital.

410.     After several lawsuits were filed against the Debtor, the Debtor ceased its

ordinary operations and sought bankruptcy protection.

411.     The Count 24 Defendants has assumed some of the obligations of the

Debtor, such as continuing operations of fitness clubs, transferring membership lists,

and taking on minimal the Debtor's debts to continue operations.

412.     As a direct and proximate result, the Debtor and its creditors have been

harmed in an amount to be determined at trial.

## COUNT XXV

### For Alter Ego/Pierce Corporate Veil

*against Harold R. Dixon, Cape Capital, LLC, Dixon Family Limited Partnership, Harold R. Dixon IV GST Trust, George L. Dixon GST Trust, William A. Dixon GST Trust, John E. Dixon GST Trust, 63 Cart Path Road Nominee Trust, 31 Green Lane Nominee Trust, LexFit, LLC, NewFit, LLC, Blast Fitness Personal Training, LLC, Auburndale Fitness Group Investments, LLC, Capecapital Maryland Heights, LLC, Capecapital West Hartford, LLC, Capecapital Irving, LLC, Capecapital Jewel, LLC, Blast Fitness Schaumburg, LLC, Blast Fitness Lawrence, LLC, Blast Fitness Mashpee, LLC, Blast Fitness Plymouth, LLC, Blast Fitness Saugus, LLC, Blast Fitness Acquisition, LLC, Blast Fitness Worcester, LLC, Blast Fitness Tewksbury, LLC, Blast Fitness Group Niles LLC, Blast Fitness Cambridge LLC, Blast Fitness Jefferson LLC, Blast Fitness Glendale Heights, LLC, Blast Fitness Humble, LLC, Blast Fitness Parliament, LLC, Blast Fitness Naperville, LLC, Townline Plaza Medford, Blast Fitness WR, LLC, and John Does 1-20 ("Count 25 Defendants")*

413.     The Trustee reasserts and re-alleges each and every allegation contained

in the preceding paragraphs as if fully set forth herein.

414.     The Count 25 Defendants actively and directly participated in the

pervasive control of the Debtor and each other.

415.    Through the Count 25 Defendants' pervasive control of the Debtor, the

Debtor transferred cash and other valuable assets without equivalent consideration to

the Counts 1 through 5 Defendants.

416.    Through the Count 25 Defendants' pervasive control of the Debtor, the

Debtor transferred the majority of its worth without equivalent consideration to the

Counts 1 through 5 Defendants, including but not limited to locations, clubs,

membership lists, gym equipment, good will, and licensing rights.

417.    As a result of the Count 25 Defendants' orchestrated transfers, the Debtor

lost the ability to meet its obligations, and its creditors have been injured.

418.    The Debtor and the Count 25 Defendants have engaged in one common

enterprise of acquiring, running, selling, and managing fitness clubs.

419.    The Debtor and the Count 25 Defendants have each confusedly

intermingled their outward identity and internal records, including their bookkeeping,

banking, corporate records, payroll, payroll management resources, and membership

lists.

420.    The Debtor and the Count 25 Defendants have each substantially

disregarded any separate nature that one might otherwise have to the other under law.

421.    The Debtor and the Count 25 Defendants have each serious ambiguity as

the capacity and manner of their relative actions.

422.    As a result of the Count 25 Defendants' orchestrated transfers, the Debtor

lost the ability to meet its obligations, and its creditors have been injured.

76

## COUNT XXVI

**For Breach of Fiduciary duty of Loyalty, Candor, and Full Disclosure;Theft of Corporate Opportunity**

*against Harold R. Dixon, Thomas Moran, Frank Hennessey, Cape Capital, LLC, Capecapital West Hartford, LLC, Capecapital Irving, LLC, and Capecapital Jewel, LLC ("Count 26 Defendants")*

423.     The Trustee reasserts and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

424.     The Count 26 Defendants occupied fiduciary positions of trust and confidence with regards to the Debtor as managers, members, officers, or agents of the Debtor.

425.     The Count 26 Defendants owed the fiduciary duty of loyalty and full disclosure to the Debtor, including a duty to protect the interests of the Debtor and not to abscond with opportunities belonging to the Debtor.

426.     The Count 26 Defendants were bound to act solely for the Debtor's benefit in all matters within the scope of their positions and were barred from taking positions directly adverse with the Debtor without full disclosure and abstinence from decisions related thereto.

427.     The Count 26 Defendants were bound to act solely for the Debtor's benefit in all matters within the scope of their positions and were barred from taking, for personal benefit, an opportunity or advantage that belonged to the Debtor.

428.     The Count 26 Defendants breached this duty by, among other things, purchasing the real estate of clubs that the Debtor purchased, taking the membership

lists of the clubs the Debtor purchased, and taking the assets of the closed clubs that the

Debtor purchased.

429.    As a direct, intended, and proximate result of the Count 26 Defendants'

breaches, the Trustee and the Debtor's Estate have suffered damages, including but not

limited to, the resulting insolvency of the Estate, costs and attorneys' fees from bringing

this action, and for other damages to be determined at trial.

## COUNT XXVII

### For Corporate Waste
*against Harold R. Dixon, Thomas Moran, Frank Hennessey, and Cape Capital, LLC ("Count 27
Defendants")*

430.    The Trustee reasserts and re-alleges each and every allegation contained

in the preceding paragraphs as if fully set forth herein.

431.    The Count 27 Defendants were members, managers, or officers of the

Debtor or completely controlled a member, manager, or officer of the Debtor.

432.    The Count 27 Defendants owed the Debtor and its members the fiduciary

of care, loyalty, and disclosure.

433.    Among other things as alleged above, the Count 27 Defendants violated

these duties and committed corporate waste by: allowing the assets of the company —

including both real and personal property — to be diverted; diverting corporate funds

and assets from proper uses without any reasonable justifications and for no discernible

corporate purpose; failing to conduct appropriate due diligence and investigation

regarding the transfers; and misappropriation of corporate funds and assets toward

self-dealing contracts and transactions.

434.     Such misuse of corporate assets is not protected by any deference due to

the Count 27 Defendants business judgment, as these misappropriations of funds for

personal ends can serve no corporate end or interest.

435.     As a direct, intended, and proximate result of the Count 27 Defendants'

breaches, the Trustee and the Debtor's Estate have suffered damages, including but not

limited to, the resulting insolvency of the Estate, costs and attorneys' fees from bringing

this action, and for other damages to be determined at trial.

## COUNT XXVIII

### For Breach of Duty to Preserve Assets; Deepening Insolvency
*against Harold R. Dixon, Thomas Moran, Frank Hennessey, and Cape Capital, LLC ("Count 28
Defendants")*

436.     The Trustee reasserts and re-alleges each and every allegation contained

in the preceding paragraphs as if fully set forth herein.

437.     The Count 28 Defendants fraudulently expanded the Debtors' debts in

order to strip the Debtor's assets, protect themselves and their related entities from

debts and obligations, and increase their personal wealth at the expense of the Debtor

and its members and creditors.

438.     Among other things, the Count 28 Defendants willfully caused the Debtor

to sign or guarantee leases when the Debtor was insolvent or in the "zone of

insolvency" or when the Count 28 Defendants knew or had reason to know that the

Debtor would be unable to meet its obligations.

439.     By reason thereof the Count 28 Defendants owed fiduciary duties to the

Debtor, its creditors, and its members to manage and supervise the Debtor's finances

and operations with the requisite level of skill care and loyalty, to maximize the value of the assets for the common benefit.

440.    The Count 28 Defendants continued to take actions that would burden the Debtor with additional liabilities, despite the fact that clubs were closing operations.

441.    The Count 28 Defendants were aware of the fraudulent purposes of the transactions in which they engaged.

442.    The Count 28 Defendants' injured the Debtor's creditors by prolonging the Debtor's corporate life past insolvency.

443.    As a direct, intended, and proximate result of the Count 28 Defendants' willful and wanton actions, the Trustee and the Debtor's Estate have suffered damages, including but not limited to, the deepening insolvency of the Estate, costs and attorneys' fees from bringing this action, and for other damages to be determined at trial.

## COUNT XXIX

### For Attorneys' Fees
*against all Defendants*

444.    The Trustee reasserts and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

445.    On entry of judgment for the Trustee, the Court may award the Trustee attorneys' fees.

## COUNT XXX

### For Award of Costs
*against all Defendants*

446.   The Trustee reasserts and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

447.   On entry of judgment for the Trustee, the Court may award the Trustee costs pursuant to Fed. R. Bankr. P. 7054(b).

## REQUESTS FOR RELIEF

WHEREFORE, Plaintiff, Gary W. Cruickshank, Chapter 7 Trustee in Bankruptcy for the Estate of Blast Fitness Group, LLC requests that this Court:

1.   Pursuant to Count 1, enter joint and several judgment in favor of the Trustee, against the Count 1 Defendants, in an amount equal to such damages as the evidence will demonstrate at trial;

2.   Pursuant to Count 2, enter joint and several judgment in favor of the Trustee, against the Count 2 Defendants, in an amount equal to such damages as the evidence will demonstrate at trial;

3.   Pursuant to Count 3, enter joint and several judgment in favor of the Trustee, against the Count 3 Defendants, in an amount equal to such damages as the evidence will demonstrate at trial;

4.   Pursuant to Count 4, enter joint and several judgment in favor of the Trustee, against the Count 4 Defendants, in an amount equal to such damages as the evidence will demonstrate at trial;

5.  Pursuant to Count 5, enter joint and several judgment in favor of the Trustee, against the Count 5 Defendants, in an amount equal to such damages as the evidence will demonstrate at trial;

6.  Pursuant to Counts 6, enter joint and several judgment in favor of the Trustee, against the Count 6 Defendants, and order the Count 6 Defendants to turnover property of the Debtor's Estate;

7.  Pursuant to Count 7, enter joint and several judgment in favor of the Trustee, against the Count 7 Defendants, and order the Count 6 Defendants to turnover property of the Debtor's Estate;

8.  Pursuant to Count 8, enter joint and several judgment in favor of the Trustee, against the Count 8 Defendants, in an amount equal to such damages as the evidence will demonstrate at trial;

9.  Pursuant to Count 9, enter joint and several judgment in favor of the Trustee, against the Count 9 Defendants, in an amount equal to such damages as the evidence will demonstrate at trial;

10. Pursuant to Count 10, enter joint and several judgment in favor of the Trustee, against the Count 10 Defendants, and order that pursuant to Mass. Gen. Laws Ch. 214 § 3(8), the Trustee is entitled to reach the assets formerly held by the Debtor that are now owned, controlled or in the possession of the Count 10 Defendants, and apply the assets for the Debtor's Estate;

11. Pursuant to Count 11, enter joint and several judgment in favor of the Trustee, against the Count 11 Defendants, for the establishment of a constructive or

82

resulting trust, ordering that Count 11 Defendants hold the assets as a resulting

trustee/constructive trustee for the benefit of the Trustee and the Debtor's estate,

and for an order requiring the Count 11 Defendants to turnover such property to

the Debtor's Estate;

12. Pursuant to Count 12, enter joint and several judgment in favor of the Trustee,

against the Count 12 Defendants, in an amount equal to such damages as the

evidence will demonstrate at trial;

13. Pursuant to Counts 13, enter joint and several judgment in favor of the Trustee,

against the Count 13 Defendants, in an amount equal to such damages as the

evidence will demonstrate at trial;

14. Pursuant to Count 14, enter joint and several judgment in favor of the Trustee,

against the Count 14 Defendants, in an amount equal to such damages as the

evidence will demonstrate at trial;

15. Pursuant to Count 15, enter joint and several judgment in favor of the Trustee,

against the Count 15 Defendants, in an amount equal to such damages as the

evidence will demonstrate at trial;

16. Pursuant to Count 16, enter joint and several judgment in favor of the Trustee,

against the Count 16 Defendants, in an amount equal to such damages as the

evidence will demonstrate at trial;

17. Pursuant to Count 17, enter joint and several judgment in favor of the Trustee,

against the Count 17 Defendants, in an amount equal to such damages as the

evidence will demonstrate at trial;

18. Pursuant to Count 18, enter joint and several judgment in favor of the Trustee, against the Count 18 Defendants, in an amount equal to such damages as the evidence will demonstrate at trial;

19. Pursuant to Count 19, enter joint and several judgment in favor of the Trustee, against the Count 19 Defendants, in an amount equal to such damages as the evidence will demonstrate at trial;

20. Pursuant to Count 20, enter joint and several judgment in favor of the Trustee, against the Count 20 Defendants, in an amount equal to such damages as the evidence will demonstrate at trial;

21. Pursuant to Count 21, enter joint and several judgment in favor of the Trustee, against the Count 21 Defendants, in an amount equal to such damages as the evidence will demonstrate at trial;

22. Pursuant to Count 22, enter joint and several judgment in favor of the Trustee, against the Count 22 Defendants, in an amount equal to such damages as the evidence will demonstrate at trial;

23. Pursuant to Count 23, enter an order substantively consolidating the assets of the Count 23 Defendants into the bankruptcy estate of Blast Fitness Group, LLC.

24. Pursuant to Count 24, finding the Count 24 Defendants liable, as successors, for the debts of Debtor, and enter joint and several judgment in favor of the Trustee, against the Count 24 Defendants, in an amount equal to such damages as the evidence will demonstrate at trial;

25. Pursuant to Count 25, enter an order piercing the corporate veil otherwise separating the Count 25 Defendants and the Debtor to fulfill the Debtor's debts, enter an order finding the Count 25 Defendants liable, as alter-egos, for the debts of the Debtor, and enter joint and several judgment in favor of the Trustee, against the Count 25 Defendants, in an amount equal to such damages as the evidence will demonstrate at trial;

26. Pursuant to Count 26, enter joint and several judgment in favor of the Trustee, against the Count 26 Defendants, in an amount equal to such damages as the evidence will demonstrate at trial;

27. Pursuant to Count 27, enter joint and several judgment in favor of the Trustee, against the Count 27 Defendants, in an amount equal to such damages as the evidence will demonstrate at trial;

28. Pursuant to Count 28, enter joint and several judgment in favor of the Trustee, against the Count 28 Defendants, in an amount equal to such damages as the evidence will demonstrate at trial;

29. Avoiding the transfers of other Blast Fitness Group, LLC property;

30. Recovering all the transfers of other Debtor property, or the value thereof, from all Defendants, or any mediate transferee, for the benefit of the Debtor's estate;

31. Awarding attorneys' fees in favor of the Trustee as appropriate;

32. Awarding reasonable costs in favor of the Trustee as appropriate; and

33. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

GARY W. CRUICKSHANK, CHAPTER 7
TRUSTEE IN BANKRUPTCY FOR THE
ESTATE OF BLAST FITNESS GROUP, LLC,

By his attorney,

Dated: January 26, 2018          */s/ Ilyas J. Rona*

Ilyas J. Rona (BBO# 642964)
Gregory N. Corbin (BBO# 687957)
MILLIGAN RONA DURAN & KING LLC
50 Congress Street, Suite 600
Boston, Massachusetts 02109
Tel: (617) 395-9570
ijr@mrdklaw.com
gnc@mrdklaw.com