**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

|  |  |
|---|---|
| In re:<br><br>BLAST FITNESS GROUP, LLC,<br><br>    Debtor<br><br>GARY W. CRUICKSHANK,<br>CHAPTER 7 TRUSTEE OF THE<br>ESTATE OF BLAST FITNESS<br>GROUP, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>HAROLD R. DIXON *et al.*,<br><br>    Defendants. | Chapter 7<br>Case No. 16-10236-MSH<br><br><br><br><br><br><br><br>Adversary Proceeding<br>No. 18-01011 |

**MEMORANDUM OF DECISION ON MOTION TO DISMISS OF**
**CAPECAPITAL JEWEL, LLC**

**I. Introduction**

In a thirty-count complaint,[1] Gary W. Cruickshank, the plaintiff and chapter 7 trustee of the bankruptcy estate of Blast Fitness Group, LLC ("BFG"), seeks damages and injunctive relief against forty named and dozens of unnamed defendants, including CapeCapital Jewel, LLC,[2] ("Cape Jewel") an Illinois limited liability company managed by defendant, Harold R. Dixon, who also controlled BFG. BFG filed a voluntary petition under Chapter 7 of the United States

---

[1] As amended by a second amended complaint (ECF #339).
[2] The complaint refers to CapeCapital Jewel, LLC while the motion to dismiss refers to Cape Capital Jewel, LLC.

1

Bankruptcy Code[3] on January 26, 2016, at which time its debts exceeded $16 million. This adversary proceeding was commenced two years after the petition date on January 26, 2018.

Cape Jewel has moved under Fed. R. Civ. P. 12(b)(6), per Fed. R. Bankr. P. 7012(b), to dismiss[4] count I (constructive fraudulent transfer under Bankruptcy Code § 548(a)(1)(B)), count II (actual fraudulent transfer under Bankruptcy Code § 548(a)(1)(A)), count III (constructive fraudulent transfer under the Massachusetts Fraudulent Transfer Act ("MUFTA") § 5(a)(2)), count IV (constructive fraudulent transfer under MUFTA § 6(a)), count V (actual fraudulent transfer under MUFTA § 5(a)(1)), count VII ("turnover" under Bankruptcy Code § 550),[5] count VIII (unjust enrichment), count X (statutory reach and apply/Bankruptcy Code §§ 544 and 550 and Mass. Gen. Laws ch. 214, § 3(8)), count XI (establishment of a resulting/constructive trust), count XVI (conspiracy), count XVII (aiding and abetting), count XVIII (conversion and civil theft), count XIX (fraud), XX (intentional interference with contractual advantage), count XXI (tortious interference with contractual advantage), count XXIII (substantive consolidation), count XXV (alter ego/piercing the corporate veil), count XXVI (breach of fiduciary duty; theft of corporate opportunity), XXIX (attorneys' fees), and count XXX (costs).

At the outset, I note that the trustee does not contest dismissal of counts I, II, VIII, XVI, XVII, XVIII, XIX, XX, XXI, XXIII, XXV, XXVI, or XXIX. I will, therefore, grant Cape Jewel's motion to dismiss those counts.

---

[3] All references to the Bankruptcy Code or the Code are to 11 U.S.C. § 101 *et seq.*
[4] ECF #354.
[5] "Turnover" is a misnomer as the statute governs liability of transferees of avoided transfers.

## II. Procedural History

The trustee filed the original complaint on January 26, 2018, and thereafter filed the first amended complaint on April 4, 2018 (ECF #130). A number of defendants, including Mr. Dixon, CapeCapital LLC, a Massachusetts limited liability company managed by Mr. Dixon and which was the sole manager of BFG, the law firm of Goodwin Procter LLP ("Goodwin") and two of its attorneys (collectively, the "Goodwin Defendants"), CapeCapital Maryland Heights, LLC, CapeCapital West Hartford, LLC, CapeCapital Irving, LLC (collectively, the "Cape Real Estate Entities"), Newfit, LLC, another Dixon-controlled entity, and other defendants[6] filed motions to dismiss the first amended complaint. The Goodwin Defendants' motions to dismiss were allowed in part and denied in part by my memorandum and order dated January 8, 2019. *See Cruickshank v. Dixon (In re Blast Fitness Grp., LLC)*, Adv. Pro. No. 18-1011, 2019 WL 137109 (Bankr. D. Mass. Jan. 8, 2019) (*Blast I*). The motions to dismiss of Mr. Dixon, CapeCapital, and the Cape Real Estate Entities were allowed in part and denied in part pursuant to separate memoranda and orders dated April 30, 2019 (*Blast II*, *Blast III*, and *Blast IV*, respectively), and the motion to dismiss of Newfit was allowed in part and denied in part pursuant to my memorandum and order dated May 24, 2019 (*Blast VIII*).[7]

---

[6] Defendants Juliet J. Dixon, and Thomas F. Walsh and Michael J. Craffey, as trustees of Harold R. Dixon IV GST Trust, George L. Dixon GST Trust, William A. Dixon GST Trust, John E. Dixon GST Trust, 31 Green Lane Nominee Trust and 63 Cart Path Road Nominee Trust also filed motions to dismiss the first amended complaint which were allowed by separate memoranda and orders dated April 30, 2019 (*Blast V-VII*).

[7] *See Cruickshank v. Dixon (In re Blast Fitness Grp., LLC)*, 603 B.R. 219 (Bankr. D. Mass. 2019) (*Blast II*), *Cruickshank v. Dixon (In re Blast Fitness Grp., LLC)*, 602 B.R. 208 (Bankr. D. Mass. 2019) (*Blast III*), *Cruickshank v. Dixon (In re Blast Fitness Grp., LLC)*, Adv. Pro. No. 18-1011, 2019 WL 5898011 (Bankr. D. Mass. April 30, 2019) (*Blast IV*) and *Cruickshank v. Dixon (In re Blast Fitness Grp., LLC)*, 603 B.R. 654 (Bankr. D. Mass. 2019) (*Blast VIII*).

Following the issuance of the above orders, the court conducted a status conference on August 21, 2019, and permitted the trustee to file a second amended complaint which he did on September 30, 2019 at ECF #339 (hereinafter the "complaint"), and which is the subject of Cape Jewel's motion to dismiss. A complete procedural history and recitation of the trustee's factual allegations and my legal findings on certain of the trustee's claims are set forth in *Blast I, II, III, IV and VIII*, which are incorporated herein by reference. Nevertheless, I reiterate below some of those factual allegations and supplement them with additional factual allegations in the second amended complaint necessary to determine Cape Jewel's motion to dismiss.

### III. Motion to Dismiss

#### A. Legal Standard

In ruling on the motion to dismiss, I must accept all well-pleaded factual allegations in the complaint as true, drawing all reasonable inferences in the trustee's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000). A claim cannot be dismissed if the trustee has demonstrated a "plausible entitlement to relief." *Sanchez v. Pereira–Castillo*, 590 F.3d 31, 41 (1st Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plaintiff's obligation requires more than "labels and conclusions" and "a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The general allegations found inadequate in *Iqbal* were themselves 'factual' assertions but highly general and made without offering any detail." *Pruell v. Caritas Christi*, 678 F.3d 10, 13 (1st Cir. 2012).

Inquiry into plausibility is a two-step process. "First, the court must sift through the averments in the complaint, separating conclusory legal allegations (which may be disregarded) from allegations of fact (which must be credited)." *Rodriguez-Reyes v. Molina-Rodriguez*, 711

4

F.3d 49, 53 (1st Cir. 2013) (citing *Morales–Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)). "Second, the court must consider whether the winnowed residue of factual allegations gives rise to a plausible claim to relief." *Id.* "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job that compels us 'to draw on' our 'judicial experience and common sense.'" *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). "'Moreover, *each* defendant's role in the [adverse action] must be sufficiently alleged to make him or her a plausible defendant. After all, we must determine whether, *as to each defendant*, a plaintiff's pleadings are sufficient to state a claim on which relief can be granted.'" *Rodriguez-Ramos v. Hernandez-Gregorat*, 685 F.3d 34, 40-41 (1st Cir. 2012) (quoting *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 16 (1st Cir. 2011) (emphasis in original); *see also Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592, 594 (1st Cir. 2011) ("[S]ave under special conditions, an adequate complaint must include not only a plausible claim but also a plausible defendant.").

B. **Trustee's Factual Allegations**[8]

    1. **BFG**

On February 14, 2011, CapeCapital, acting through Mr. Dixon, formed BFG, a Massachusetts limited liability company.[9] ¶ 66. CapeCapital was the sole manager of BFG, and Mr. Dixon, in turn, was the sole manager and a member of CapeCapital. ¶ 3. At its peak, BFG owned and operated over sixty fitness clubs bearing its name throughout the United States. (Intro., p. 2). At all relevant times, BFG acted at the direction of CapeCapital and Mr. Dixon. ¶ 98. BFG owned, entirely or partially, seventeen subsidiaries through which it operated its

---

[8] Factual allegations are cross-referenced to the relevant paragraphs (symbol ¶) of the complaint.
[9] Although not specifically pleaded in the complaint, there is no dispute that BFG is a Massachusetts limited liability company.

business.[10] ¶ 45. Fitness clubs at different locations were often operated through separate BFG subsidiaries, and those subsidiaries were often the actual tenants under the applicable leases for the premises. ¶¶ 260, 265. Among the fitness clubs operated by various subsidiaries, one was located in Chicago, Illinois and was referred to in the complaint as "Chicago (Jewell), IL." or simply as "Jewel." ¶¶ 293f, 312.

In 2011 and 2012, BFG, Mr. Dixon and Steven Borghi, Mr. Dixon's business partner and a member of BFG, were mired in a dispute with Elizabeth Beninati, the widow of Mr. Borghi's previous business partner in the discount fitness club business. ¶¶ 63, 65, 68-71. Ms. Beninati commenced a Massachusetts state court lawsuit against Mr. Dixon, Mr. Borghi and BFG on May 24, 2012, seeking millions of dollars in damages. ¶¶ 71, 385. In July 2014, the state court entered judgment against Messrs. Dixon and Borghi. ¶¶ 78, 324.

### 2. *Cape Jewel and the Chicago Real Estate*

On December 21, 2011, Mr. Dixon formed Cape Jewel, an Illinois limited liability company for which he served as a manager. ¶¶ 17, 345. On December 27, 2011, Cape Jewel purchased, for an unknown amount, commercial real estate located at 6057 S. Western Avenue, Chicago, Illinois, which served as its principal office. ¶¶ 17, 346.

Cape Jewel leased the Chicago space to Blast Fitness Acquisition, LLC, a Delaware limited liability company and wholly owned subsidiary of BFG, or another entity owned by BFG (the "BFG affiliate") for the purposes of housing a fitness club. ¶¶ 24, 45, 54, 347. BFG paid Cape Jewel inflated rent for the space in the amount of $45,000 per month, and it also paid

---

[10] Each of the seventeen BFG subsidiaries is a defendant here. The subsidiaries are named in numerous counts of the complaint, including counts for fraudulent transfers, piercing the corporate veil/alter ego and substantive consolidation. None of the BFG subsidiaries has filed a responsive pleading to the complaint.

6

inflated and inappropriate expenses to Cape Jewel, including all real estate taxes on the building while the BFG affiliate was not the only tenant in the building. ¶¶ 348, 349. This payment of inflated rent and inappropriate real estate taxes and other expenses amounted to a fraudulent transfer of BFG's funds to Cape Jewel, made with actual intent to defraud BFG's creditors. ¶ 349.

### 3. Unexplained Payments Made by BFG for the Benefit of Cape Jewel

On August 15, 2012, BFG wired $410,000 to Core Industries, which was listed as "Jewel Lombard Niles down payments." ¶ 350. On April 18, 2012, BFG wired $175,000 to Zcorp Services with a reference to "jewel." ¶ 351. On the trustee's information and belief, these payments amounted to fraudulent transfers that benefited Cape Jewel. ¶¶ 350-51. In May 2013, BFG made a payment in the amount of $384,000 referenced as a "Startrac loan payoff."[11] ¶ 352. On the trustee's information and belief, this payment was a fraudulent transfer that benefited Cape Jewel, *or other defendants*, rather than BFG. *Id*. (emphasis added).

### 4. Operation of Fitness Clubs

BFG could not pay its debts as they arose and it implemented a strategy, through Mr. Dixon and CapeCapital, of shifting assets from one fitness club to another. ¶¶ 264, 321. At the direction of Mr. Dixon and CapeCapital, BFG would shut down a profitable club, transfer the club's assets—owned by a particular subsidiary of BFG—to one of its other wholly owned subsidiaries and leave the now asset-less subsidiary with its liabilities. ¶¶ 256, 264, 271.

A large number of BFG's creditors are landlords who leased space to wholly-owned entities of BFG. ¶ 257. When clubs were shut down, the subsidiary, which was the actual tenant

---

[11] There is no other information in the complaint about Core Industries, Zcorp Services or Startrac.

7

under the lease, would stop making rent payments to the landlord. ¶ 265. The landlord would sue the tenant, only to find that the assets of the tenant had been transferred to another subsidiary of BFG. ¶ 266. From 2012 to 2016, BFG was involved in numerous lawsuits commenced by landlords and others for unpaid rents and other lease defaults. ¶¶ 201, 213-14, 246-48, 270. At all times relevant to the claims and causes of action alleged in the complaint, BFG was insolvent and insufficiently capitalized. ¶¶ 290, 319-321.

### IV. Trustee's Claims Against Cape Jewel

#### A. Fraudulent Transfer Claims Generally

Counts III, IV and V of the complaint allege fraudulent transfers involving Cape Jewel consisting of: 1) BFG's payment to Cape Jewel of inflated rent in the amount of $45,000 per month; 2) BFG's payment of inflated and inappropriate expenses consisting of real estate taxes for the Chicago location while the BFG affiliate was not the only tenant in the building; and 3) BFG's three payments in 2012 and 2013 to third parties which benefitted Cape Jewel and/or other defendants, rather than BFG (collectively, the "Transfers"). The trustee has alleged in the complaint the existence of creditors whose claims arose both before and after the Transfers, including Ms. Beninati and landlords, and that BFG was insolvent at the time it made the Transfers.

#### B. Counts III and IV- MUFTA §§ 5(a)(2) and 6(a) and Bankruptcy Code §§ 544(b) and 550

In counts III and IV, the trustee asserts fraudulent transfer claims against Cape Jewel under MUFTA §§ 5(a)(2) and (6) based on the Transfers.

##### 1. Applicable Law

MUFTA §§ 5 and 6, in relevant part, provide:

> Section 5. (a) A transfer made . . . by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made . . . , if the debtor made the transfer . . . :
>> . . . (2) without receiving a reasonably equivalent value in exchange for the transfer . . , and the debtor:
>>> (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>> (ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due. . . .
>
> Section 6. (a) A transfer made . . . by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer . . . .

Mass. Gen. Laws ch. 109A, §§ 5(a)(2) and 6(a).

Section 8(a) of MUFTA provides a range of remedies and types of recoveries available against either a fraudulent transferor or transferee to aid a creditor in collection. Section 9 of MUFTA, in turn, provides, in part, that "to the extent a transfer is voidable in an action by a creditor under [§ 8(a)(1)], the creditor may recover judgment for the value of the asset transferred . . . or the amount necessary to satisfy the creditor's claim, whichever is less . . . ," Mass. Gen. Laws ch. 109A, § 9(b), and the judgment may be entered against either "(1) the first transferee of the asset or the person for whose benefit the transfer was made; or (2) any subsequent transferee. . . ." *Id*. at § 9(b)(1) and (2).

Bankruptcy Code § 544(b) permits a trustee to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding [an allowed unsecured claim] . . . . " 11 U.S.C. § 544(b). Code § 550 provides a recovery action against certain transferees where the trustee or estate representative has successfully avoided a transfer under one of the avoiding powers. If there are voidable

transfers under state or federal law, Code § 550 determines from whom the estate may recover fraudulently transferred assets or their value and permits recovery from "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a)(1) and (2).

"To establish a claim for constructive fraudulent transfer [under MUFTA § 5(a)(2)], the trustee has the burden of proof on the following elements: (1) that the Debtor made a transfer, (2) without receiving a reasonably equivalent value in exchange, and (3) the Debtor intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due." *Nickless v. Pappas (In re Prime Mortg. Fin., Inc.)*, Adv. P. No. 09-04047-MSH, 2011 WL 4572006, at *3 (B.A.P. 1st Cir. Feb. 14, 2011). The elements of a cause of action under § 6(a) of MUFTA are similar: "(1) a transfer was made by the Debtor; (2) the Debtor made the transfer without receiving a reasonably equivalent value in exchange for the transferred property; and (3) the Debtor either was insolvent at the time of the transfer or became insolvent as a result of the transfer." *Grochocinski v. Knippen (In re Knippen)*, 355 B.R. 710, 736 (Bankr. N.D. Ill. 2006), *aff'd sub nom. Knippen v. Grochocinski*, Civ. A. No. 07C1697, 2007 WL 1498906 (N.D. Ill. May 18, 2007) (applying 740 Ill. Comp. Stat. 160/6(a), which is identical to MUFTA § 6(a)).

### 2. Discussion

With respect to BFG's payment of inflated rent, I find that the trustee has not pleaded sufficient facts to support plausible avoidance claims under MUFTA §§ 5(a)(2) or 6(a). Other than the amount of the monthly rental payment made by BFG to Cape Jewel at some point in time ($45,000), the complaint contains no allegations concerning why the rental rate should be considered inflated, market rates for comparable space, the dates or total amounts of rent

payments made by BFG, the date or terms of any lease between the BFG affiliate and Cape Jewel, the number of other tenants in the building or the monthly rent they were charged, or the amount of space leased by the BFG affiliate or any other tenants. The trustee alleges only that the monthly rent of $45,000 was "inflated." I am unable to draw a reasonable inference that BFG did not receive reasonably equivalent value in exchange for lease payments. The allegations concerning inflated rent are conclusory and do not rise above the level of speculation for purposes of fraudulent transfer claims in counts III and IV.

With respect to BFG's payment of inflated and inappropriate expenses consisting of "all real estate taxes on the building," I find that the trustee has not pleaded sufficient facts to support plausible avoidance claims under MUFTA §§ 5(a)(2) or 6(a). While the trustee asserts that it is reasonable to infer that Cape Jewel reaped a benefit in the form of reduced expenses, that is surmise. The complaint contains no allegations concerning the terms of any lease between the BFG affiliate and Cape Jewel, the amount of real estate taxes paid by BFG, the amount of space rented by the BFG affiliate, the number of other tenants in the building, the arrangements or lease terms for other building tenants, or why payment of real estate taxes in an unstated amount for an unstated duration should be considered inflated and inappropriate. I am unable draw a reasonable inference that BFG did not receive reasonably equivalent value in exchange for payment of real estate taxes on the Chicago space. The complaint's allegations concerning BFG's payment of real estate taxes are conclusory and do not rise above the level of speculation for purposes of fraudulent transfer claims.

With respect to the 2012 wire transfers from BFG to Core Industries ($410,000), listed as "Jewel Lombard Niles down payments" and Zcorp Services ($175,000), containing a reference to "jewel," and the 2013 BFG payment ($384,000) referenced as "Startrac loan payoff," I find

11

that the trustee has not pleaded sufficient facts to support plausible avoidance claims under MUFTA §§ 5(a)(2) or 6(a). The trustee asserts the complaint's "allegations make clear that these are payments to creditors of [Cape] Jewel," apparently based on the reference to the word "jewel" in the 2012 transfers. The allegations about these payments are little more than speculation and conjecture and are further dubious in light of the fact that one of the fitness centers operated by a BFG subsidiary was also called Jewel. Moreover, there are no allegations in the complaint supporting any nexus between the "Startrac loan payoff" and Cape Jewel. The trustee failed to allege sufficient facts in the complaint to support a plausible claim that Cape Jewel received any benefit from the payments or that it was an initial, subsequent or beneficial transferee of the payments under MUFTA § 9 or Bankruptcy Code § 550. Accordingly, I will enter an order allowing Cape Jewel's motion to dismiss counts III and IV.

**C. Count V- MUFTA § 5(a)(1) and Bankruptcy Code §§ 544(b) and 550**

In count V, the trustee asserts fraudulent transfer claims against Cape Jewel under MUFTA § 5(a)(1) based on the Transfers.

*1. Applicable Law*

MUFTA § 5(a)(1) provides:

> Section 5. (a) A transfer made . . . by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made . . . if the debtor made the transfer . . . :
> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor. . . .

Mass. Gen. Laws ch. 109A, § 5(a)(1). MUFTA § 5(b) contains a non-exhaustive list of factors, or "badges of fraud," courts may consider when determining actual intent of a debtor to hinder, delay, or defraud a creditor. The list includes:

> whether (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer . . . was disclosed or concealed; (4) before the transfer was made . . . the debtor

12

> had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred . . . ; (9) the debtor was insolvent or became insolvent shortly after the transfer was made. . . ; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Mass. Gen. Laws ch. 109A, § 5(b).

### 2. Discussion

The trustee asserts the presence of three badges of fraud under MUFTA § 5(b), namely that Cape Jewel was an insider, as it was managed and controlled by Mr. Dixon, the Transfers were made at a time when BFG had been sued or was threatened with suit by Ms. Beninati, and BFG was insolvent at the time of the Transfers.  For the reasons stated above with respect to the constructive fraudulent transfer allegations, the complaint's allegations with respect to actual fraudulent transfers are also insufficient to support a plausible claim that BFG made the Transfers with actual intent to hinder, delay or defraud its creditors. This is the case notwithstanding the presence of three badges of fraud and even after drawing all reasonable inferences in favor of the trustee.  Accordingly, I will enter an order allowing Cape Jewel's motion to dismiss count V.

### D.  *Count VII- Bankruptcy Code § 550*

Count VII is brought under Bankruptcy Code § 550 to effectuate any judgment the trustee might recover under the fraudulent transfer counts. Dismissal of counts I, II, III, IV and V against Cape Jewel necessitates dismissal of count VII against it. I will enter an order allowing Cape Jewel's motion to dismiss count VII.

E. *Count X- Count X-Statutory Reach and Apply-Code §§ 544, 550; Mass. Gen. Laws ch. 214, § 3(8)*

In count X, the trustee asserts claims under Bankruptcy Code §§ 544 and 550 and under Mass. Gen. Laws ch. 214, § 3(8) to reach and apply the assets formerly held by BFG that are now owned, controlled, or in the possession of Cape Jewel as result of the alleged actual fraudulent transfers.

  1. *Applicable Law*

Bankruptcy Code §§ 544 and 550 are discussed above. Mass. Gen Laws ch. 214, § 3(8) provides:

> Section 3. The supreme judicial and superior courts shall have original and concurrent jurisdiction of the following cases:
> . . . (8) Actions to reach and apply in payment of a debt any property, right, title or interest, real or personal, of a debtor, liable to be attached or taken on execution in a civil action against him and fraudulently conveyed by him with intent to defeat, delay or defraud his creditors, or purchased, or directly or indirectly paid for, by him, the record or other title to which is retained in the vendor or is conveyed to a third person with intent to defeat, delay or defraud the creditors of the debtor.

Mass. Gen. Laws ch. 214, § 3(8). The statute "authorizes a statutory reach and apply action to reach assets that have been conveyed by the defendant debtor to a third party with intent to defeat, delay, or defraud the debtor's creditors and is coextensive with [MUFTA]." *De Prins v. Michaeles*, 236 F. Supp. 3d 482, 490 (D. Mass. 2017). "Resolution of the question as to whether [a creditor] has a plausible claim under the [M]UFTA and Mass. Gen. L. c. 214, § 3(8) therefore, turns on whether [a creditor] has alleged sufficient facts to show that [a debtor] transferred his assets . . . with the intent to defraud his creditors." *Id*.

  2. *Discussion*

As stated above, the trustee has not asserted a plausible claim under MUFTA § 5(a)(1) that BFG transferred assets to or for the benefit of Cape Jewel with actual intent to hinder, delay

14

or defraud its creditors. Accordingly, I will enter an order allowing Cape Jewel's motion to dismiss count X.

### F. Count XI-Establishment of a Resulting/Constructive Trust

#### 1. Applicable Law

In Massachusetts, a constructive trust is "a flexible tool of equity designed to prevent unjust enrichment resulting from fraud, a violation of a fiduciary duty or confidential relationship, mistake, or 'other circumstances' in which a recipient's acquisition of legal title to property amounts to unjust enrichment." *Maffei v. Roman Catholic Archbishop of Boston*, 449 Mass. 235, 246 (2007) (citing *Fortin v. Roman Catholic Bishop of Worcester*, 416 Mass. 781, 789 (1994)).

#### 2. Discussion

The trustee asserts that as long as he has claims against Cape Jewel, it is appropriate for a constructive trust to be available in case equity so requires. The complaint fails to contain sufficient allegations for me to plausibly conclude that Cape Jewel was unjustly enriched as having received any property of BFG as a result of a fraud, mistake, or any other circumstance requiring the imposition of a constructive trust. The allegations that Cape Jewel received excessive rent and additional benefit in the form of BFG's payment of its real estate taxes are vague and conclusory. I will enter an order allowing Cape Jewel's motion to dismiss count XI.

### G. Count XXX-Costs

Having dismissed all claims against Cape Jewel, I will enter an order dismissing count XXX for costs as such count is dependent upon entry of a judgment against Cape Jewel.

## V. Conclusion

Based on the foregoing, an order shall enter granting Cape Jewel's motion to dismiss with respect to all counts against it consisting of counts I, II, III, IV, V, VII, VIII, X, XI, XVI, XVII, XVIII, XIX, XX, XXI, XXIII, XXV, XXVI, XXIX, and XXX.

Dated: February 5, 2020                              By the Court,

*[signature]*

Melvin. S. Hoffman
United States Bankruptcy Judge

Counsel Appearing:    Ilyas J. Rona, Esq.
Milligan Rona Duran & King LLC
Boston, MA
for the plaintiff, Gary W. Cruickshank,
Trustee of the Estate of Blast Fitness
Group, LLC

Joseph S.U. Bodoff, Esq.
Rubin & Rudman LLP
Boston, MA
for the defendant, CapeCapital Jewel, LLC